Seth Steidinger and Natasha Koller, *on behalf of* )
*themselves and all others similarly situated,* )
                              )
          Plaintiff, )
                              )
     v. ) Case No. 1:24-cv-01074-JBM-JEH
                              )
Blackstone Medical Services, LLC, )
                              )
          Defendant. )

**DEFENDANT BLACKSTONE MEDICAL SERVICES, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
RULE 12(b)(6) AND RULE 12(f) MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
AND TO STRIKE DEMAND FOR ATTORNEYS' FEES**

Defendant, BLACKSTONE MEDICAL SERVICES, LLC ("Blackstone"), by and through

its undersigned counsel, pursuant to Local Rule 7.1, hereby files this Memorandum of Law in

Support of Its Rules 12(b)(6) and 12(f) Motion to Dismiss Plaintiffs' First Amended Class Action

Complaint ("FAC") [ECF 6] filed by Plaintiffs Seth Steidinger and Natasha Koller (collectively,

"Plaintiffs") on April 5, 2024, and in support thereof states as follows:

## I.    INTRODUCTION

Plaintiffs sue Blackstone based on Plaintiffs' alleged receipt of text messages in follow up

to at-home sleep tests prescribed by Plaintiffs' doctors. Because Plaintiffs' allegations, on their

face, establish that the complained of messages ***do not*** encourage the purchase of any goods or

services, and were sent to Plaintiffs at the request of their doctors to provide prescriptions, the

FAC fails to state a claim and should be dismissed.

Though the FAC is a "shotgun" pleading and should be dismissed on this ground alone, it

appears Plaintiffs attempt to bring five claims under five separate authorities: (1) a claim under the

Opt-Out regulation, 47 C.F.R. § 64.1200(b), of the TCPA (the "Opt-Out Claim"), (2) a claim under

the Do-Not-Call ("DNC") Registry regulation, 47 C.F.R. § 64.1200(c), of the TCPA (the "DNC

Registry Claim"), (3) a claim under the Internal DNC List regulation, 47 C.F.R. § 64.1200(d) of

the TCPA (the "Internal DNC List Claim"), (4) a claim under the Abusive Telemarketing

regulation, 16 C.F.R. § 310.4 of the TCFAPA (the "Abusive Telemarketing Claim"), and (5) a

claim under Fla. Stat. § 501.059 of the FTSA (the "FTSA Claim").

The FAC should be dismissed because:

1. the complained of messages do not encourage the purchase of goods or services;

2. the FAC constitutes an impermissible "shotgun" pleading;

3. the complained of messages were sent with Plaintiffs' prior express consent;

4. Plaintiffs do not, and cannot, plausibly allege that Blackstone used an automatic telephone dialing system, or an artificial or prerecorded voice;

5. the complained of messages are exempt from the TCPA as health care messages are messages sent for emergency purposes;

6. Plaintiffs do not allege compliance with the pre-suit notice requirement of the TCFAPA;

7. Plaintiffs do not allege that they are "consumers," as defined by the FTSA; and

8. Plaintiffs have no basis for attorneys' fees for their TCPA claims.

## II. ARGUMENT

**A. The Court should dismiss the FAC because the messages complained of by Plaintiffs do not encourage the purchase of goods or services.**

Plaintiffs cannot prevail on any TCPA or FTSA claim unless they sufficiently allege that

the complained of messages encourage, or solicit, the purchase of consumer goods or services. *See*

47 C.F.R. § 64.1200(f)(10) (defining "seller" as "the person or entity on whose behalf a telephone

call or message is initiated for the purpose of ***encouraging the purchase or rental of . . . property, goods, or services***" (emphasis added)); *id.* § 64.1200(f)(13) (defining "telemarketing" as "the initiation of a telephone call or message for the purpose of ***encouraging the purchase or rental of . . . property, goods, or services***" (emphasis added)); *id.* § 64.1200(f)(15) (defining "telephone solicitation" as a "call or message for the purpose of ***encouraging the purpose or rental of . . . property, goods, or services***" (emphasis added)); *see also* Fla. Stat. § 501.059(1)(j) (defining a "telephonic sales call" as "for the purpose of ***soliciting a sale of any consumer goods or services***" (emphasis added)). Because Plaintiffs' allegations establish that the complained of messages were sent merely in follow up to doctor-ordered at-home sleep test prescriptions, the messages were not remitted for the purpose of encouraging or soliciting the purchase or rental of consumer goods and services, and thus not actionable.

When a plaintiff is not required to pay for goods or services offered in a telephone communication, the communication is not for the purpose of encouraging the purchase of those goods or services. *See Hulce v. Zipongo*, 2024 WL 1251108, at *3 (E.D. Wis. Mar. 18, 2024). In the medical context, when a particular good or service is paid for by other than the patient, such as the patient's insurance company, a communication is not prohibited by the TCPA. *Id.* The reasoning is that, under a direct reading of the law, encouraging the patient's ***utilization*** of the product or service is not the same as encouraging the patient's ***purchase*** of the good or service. *Id.* (sending a text message to a patient encouraging the use of a free service covered by the patient's health insurance is not a violation of the TCPA because, "[a]lthough the purpose of the communications was to encourage [the patient] to utilize [the defendant's] services, it does not follow that [the defendant's] purpose was to encourage him to purchase [its] services").

Here, Plaintiffs do not plausibly allege that the complained of messages were sent with the purpose of encouraging or soliciting a sale of consumer goods or services. For example, they do not allege that they had to pay for Blackstone's sleep test, or that Blackstone did anything more than encourage filling the prescription for Blackstone's sleep test. Specifically, none of the complained of messages, which are incorporated into the FAC, ask Plaintiffs to purchase anything, seek payment from Plaintiffs, or even reference a price. *See* [ECF 6, ¶¶ 39, 58]. Instead, the messages merely follow up with Plaintiffs on how to "schedule" their sleep study, and even state that the sleep test was "ordered by your doctor" and may be covered by Plaintiffs' "benefits." *See* [*id.*] Because the messages do not encourage the *purchase* of any of Blackstone's products, Plaintiffs do not state a TCPA or FTSA claim and the FAC should be dismissed.

**B.     The Court should dismiss the FAC because it is an impermissible "shotgun" pleading.**

Under Federal Rules of Civil Procedure 8(a)(2) and 10(b), a pleading must contain a "short and plain" statement of the claim, and "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Complaints that "present a vague, confusing, and conclusory articulation of the factual and legal basis for the claim and [take] a general kitchen sink approach to pleading the case . . . frustrate Rule 8's objective" and should be dismissed. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946-47 (7th Cir. 2013). Complaints that violate one or both rules constitute "shotgun" pleadings, which are "calculated to confuse the 'enemy,' and the court." *Weiland v. Palm Beach Cty. Sherrif's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015); *see Chriswell v. Village of Oak Lawn*, 2013 WL 5903417, at *5 (N.D. Ill. Nov. 4, 2013). Such complaints are "flatly forbidden by the [spirit], if not the [letter], of these rules." *Id.* (alteration in original) (citing *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)). This Court should dismiss the FAC because it is an impermissible "shotgun" pleading.

First, the FAC is a "shotgun" pleading because "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321 & n.11. Indeed, Count II incorporates all of Count I (*See* [ECF 6, at ¶ 104]), Count III incorporates Counts I and II (*See* [ECF 6, at ¶ 112]), and so on. By so doing, the FAC does not give adequate notice to Blackstone of the claims against it. As case in point, Count V, Plaintiffs' supposed Florida-law claim, incorporates every legal and factual argument made in support of Plaintiffs' Federal-law claims.

Second, the FAC is a "shotgun" pleading because each count is not separated into an individual cause of action or claim for relief. *See Weiland*, 792 F.3d at 1322–23 & n.13; *see Chriswell*, 2013 WL 5903417, at *5. In this case, Plaintiffs bring multiple theories of liability within Count I. Specifically, in Count I, Plaintiffs bring both claims for violating the DNC Registry regulation and the Internal DNC List regulation. *See* [ECF 6, at ¶¶ 97–100]. These two regulations have different requirements of proof, different elements, and different prerequisites. To state just one difference, the DNC Registry regulation governs "telephone solicitations" while the Internal DNC List regulation governs "artificial or prerecorded voices." This same defect appears in Count II as well. *See* [ECF 6, at ¶¶ 106–07].

Furthermore, in Count III, Plaintiffs cite 47 U.S.C. § 227 and 16 C.F.R. § 310.4 as authority to bring their claim. Section 227 is a statute within the TCPA, which gives authority to the Federal Communications Commission ("FCC") to promulgate rules regarding telephone solicitations. *See* 47 U.S.C. § 227(c). However, Section 310.4 is not promulgated under the FCC's rulemaking authority under the TCPA. In fact, the regulation is not promulgated by the FCC at all; instead, it was promulgated by the Federal Trade Commission ("FTC") pursuant to the TCFAPA—a statute not referenced by name in the FAC. *See* 16 C.F.R. § 310.1. Thus, it is impossible for Blackstone

to respond to Count III without knowing the authority under which Plaintiffs bring their claims—i.e., whether Plaintiffs bring Count III under the TCPA or under the TCFAPA.

Third, the FAC is a "shotgun" pleading because it does not specify which Plaintiff or Plaintiffs, on behalf of which class or classes, raise which claim or claims. *See Weiland*, 792 F.3d at 1323 & n.14. In the FAC, there are two named plaintiffs, representing three alleged classes, raising five different counts. Some of Blackstone's defenses rely on the identity of the party or class that brings each claim. To the extent that Plaintiffs allege anything relating to which Plaintiff or class brings which counts, Plaintiffs allegations are too vague. *See, e.g.*, [ECF 6, at ¶ 93 ("Plaintiffs bring this claim on behalf of themselves and the Classes."), ¶ 105 ("Plaintiffs bring this claim on behalf of themselves and the Class.")]. In short, the FAC violates Rules 8(a)(2) & 10(b) and should be dismissed.

**C.** **The Court should dismiss Plaintiff's DNC Registry Claims and Internal DNC List Claims (Counts I & II) because Plaintiffs allege that the complained of messages were sent with their prior express consent.**

Plaintiffs cannot prevail on their DNC Registry or Internal DNC List Claims if the complained of messages were sent with Plaintiffs' express consent. Specifically, the DNC Registry regulation only prohibits certain "telephone solicitation[s]," the definition of which specifically *excludes* "a call or message . . . to any person with that person's prior express invitation or permission."[1] 47 U.S.C. § 227(a)(4)(A); 47 C.F.R. § 64.1200(f)(15)(i). Thus, communications sent with Plaintiff's prior express consent are not prohibited by the DNC Registry regulation. Also, the

---

[1] Although "prior express invitation or permission" is not defined by statute or regulation, case law provides guidance on the interpretation of "prior express invitation or permission." *See Gorss Motels, Inc. v. AVM Ent., Inc.*, 2021 WL 1163022, at *5 (D. Conn. Mar. 26, 2021) (finding that "prior express permission" and "prior express consent" are "essentially the same" and that they "carry an equivalent meaning under the TCPA"), *aff'd*, 997 F.3d 470 (2d Cir. 2021); *see also Physicians Healthsource, Inc. v. A-S. Med. Sol'ns, LLC*, 318 F.R.D. 712, 719 (N.D. Ill. 2016) (using "prior express invitation or permission" and "prior express consent" interchangeably).

Northern District of Illinois has recognized a similar consent defense to claims based on the Internal DNC List regulation. *Hossfeld v. Allstate Ins. Co.*, 2024 WL 1328651, at *11 (N.D. Ill. Mar. 28, 2024) (collecting cases). Further, current FCC guidance is clear in that if an individual gives consent to receive communications, the recipient of such consent may convey that consent to a third-party, as long as the third-party acts within the scope of the original consent. *See In re GroupMe, Inc.*, 29 FCC Rcd. 3442, 3445 (2014) ("[A]llowing consent to be obtained and conveyed via intermediaries in this context facilitates these normal, expected, and desired business communications in a manner that preserves the intended protections of the TCPA."). In the context of healthcare, when a patient grants consent to a health professional to contact the patient for purposes of treatment, the health professional can convey the patient's consent to a third party for the same purpose. *See, e.g.*, *Mais v. Gulf Coast Coll. Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014) (providing phone number to hospital constituted consent to be contacted regarding treatment and related billing, and granted hospital the ability to convey consent to a third-party radiologist); *Baisden v. Credit Adjs., Inc.*, 813 F.3d 338, 344 (6th Cir. 2016) (providing phone number to hospital constituted consent to be contacted regarding treatment and related billing, and it granted hospital the ability to convey consent to a third-party anesthesiologist).

Here, Plaintiffs' allegations lead to only one plausible conclusion: that Plaintiffs consented to receive the messages. Plaintiffs' consent arises from the fact that Plaintiffs each (1) provided their doctor with their phone number,[2] and (2) discussed with their doctor the possibility of receiving a sleep study. *See Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1064 (N.D. Ill. 2016) (providing a phone number to a company in an email relating to the possibility of

---

[2] Although Plaintiffs do not allege specifically that they gave their phone numbers to their doctors, this is the only plausible conclusion the Court can draw from the allegations in the Complaint. In fact, Plaintiff Koller implies this conclusion when she alleges that "Upon information and belief, Blackstone obtained Plaintiff Koller's phone number from Plaintiff Koller's doctor." [ECF 6, at ¶ 51].

employment gave consent to receive solicitations for an independent contractor position offered two years later by the company). Plaintiff Steidinger alleges that he "discuss[ed] potentially taking a home sleep test with [his] healthcare provider" [ECF 6, at ¶ 38]. Similarly, Plaintiff Koller alleges that her "doctor recommended Blackstone as a provider able to perform a sleep study." [ECF 6, at ¶ 51]. Therefore, as admitted by Plaintiffs, both discussed with their doctors the possibility of receiving a sleep study, which makes Blackstone's alleged messages fall squarely within the scope of Plaintiffs' consent to receive messages from their respective doctors about the sleep studies. Thus, Plaintiffs cannot state a claim and dismissal of the DNC Registry Claims and Internal DNC List Claims (Counts I & II) is warranted.

Plaintiff Koller unsuccessfully attempts to plead around this legal deficiency by alleging that she "did not give her physician permission to convey to Blackstone that Plaintiff Koller consented to Blackstone's calls." [ECF 6, at ¶ 52]. However, by providing her doctor with her phone number and discussing a potential sleep study, Plaintiff Koller expressly consented to receive communications regarding the sleep study from her doctor and those medical professionals to whom her doctor conveyed consent, including Blackstone. *See In re GroupMe, Inc.*, 29 FCC Rcd. at 3445. Based on Plaintiff Koller's allegations, she did nothing to revoke such consent.

**D. The Court should dismiss Plaintiff's Opt-Out Claims and Internal DNC Claims (Counts I, II, & IV) because Plaintiffs do not allege that EMSI used an automatic telephone dialing system or an "artificial or prerecorded voice."**

For messages to be subject to the Opt-Out regulation or the Internal DNC regulation, they must be made using an "automatic telephone dialing system" ("ATDS") or an "artificial or prerecorded voice." *See* 47 U.S.C. § 227(b)(1)(A)–(B) (prohibiting only communications using an "automatic telephone dialing system or an artificial or prerecorded voice"); *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1079 (7th Cir. 2021) ("A call to [a] cell phone without using an ATDS or artificial or prerecorded voices would not violate the TCPA."); *see also* 47 C.F.R. §

64.1200(b) (designating requirements for "artificial or prerecorded voice telephone messages"); *id.* § 64.1200(d) (regulating "artificial or prerecorded-voice telephone call[s]"). Plaintiffs do not allege, even in a conclusory fashion, that Blackstone made communications using either an ATDS or an "artificial or prerecorded voice."[3] Therefore, this Court must dismiss Plaintiffs' Opt-Out and Internal DNC List Claims (Counts I, II, & IV).

Even if Plaintiff had alleged the use of an ATDS or an "artificial or prerecorded voice," the FAC could not withstand a motion to dismiss. Specifically, Plaintiffs must allege sufficient factual allegations to support any conclusion that Blackstone used an ATDS or an "artificial or prerecorded voice." *See, e.g.*, *Jackson v. Bank of New York Mellon*, 2016 WL 4942085, at *16 (S.D. Ala. July 19, 2016) (conclusory allegation that defendant "used [an ATDS] to call the [p]laintiffs' cell phones numerous times" is insufficient to state a TCPA claim without other factual allegations), *report and recommendation adopted,* CV 16-0062-CG-M, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016); *Duran v. Wells Fargo Bank, N.A.*, 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) (dismissing a TCPA claim because, every time the plaintiff answered a call from the defendant, she actually spoke with the defendant's representatives, which "negates a claim that the calls were made by . . . artificial or prerecorded voice"); *Righetti v. Auth. Tax Services, LLC*, 2015 WL 4089799, at *3 (N.D. Cal. July 6, 2015) (dismissing, even on a default judgment standard, because there were no allegations that every single phone call used a "prerecorded voice"). Here, Plaintiffs did not allege facts to compel an inference that Blackstone used an ATDS or an "artificial or prerecorded voice."

Sufficient facts can include allegations that the messages are "generic" or "impersonal," or that a series of identical messages were sent to a single person or group of people. *See Sojka v.*

---

[3] In fact, in Count I, Plaintiff misquotes the Internal DNC regulation by excluding, without using elipses, the phrase "artificial or prerecorded voice." *See* [ECF 6, ¶ 95].

*DirectBuy, Inc.*, 35 F. Supp. 3d 996, 1003 (N.D. Ill. 2014). However, the TCPA cannot prohibit companies from using a live operator to send phone messages. *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 793 (N.D.W. Va. 2017) (holding that the TCPA does not violate First Amendment only because does not prohibit all forms of communication; the TCPA still allows companies to communicate using a "live operator" or with "prior consent").

The FAC, on its face, compels the inference that Blackstone ***did not*** use an ATDS or an "artificial or prerecorded voice." First, any system allegedly used by Blackstone is not an ATDS because Plaintiffs do not allege that Blackstone's system can "store or produce telephone numbers to be called, using a random or sequential number generator." See 47 U.S.C. § 227(a)(1)(A). In fact, because the phone numbers were specifically related to "tests ordered by [Plaintiff's] doctor" [ECF 6, at ¶¶ 39, 58], the phone numbers are not generated randomly or sequentially at all.

For the same reason, Plaintiffs do not allege that any message is the result of an "artificial or prerecorded voice," rather than the result of a live operator. Blackstone's alleged messages are not generic or impersonal, nor were they identical to each other. In fact, they specifically reference a personal request from each Plaintiffs' respective doctor. [ECF 6, at ¶¶ 39, 58.] And, to the extent that Plaintiffs allege that they had a phone call with Blackstone, they consistently allege that they spoke with a real person. [*See* ECF 6, at ¶¶ 38 (alleging that Plaintiff Steidinger had a "live conversation"), 63 (alleging that Plaintiff Koller spoke with "Blackstone's representative")]. Thus, Plaintiff does not, and cannot, sufficiently allege that Blackstone used an ATDS or an "artificial or prerecorded voice." Accordingly, the Court should dismiss Plaintiffs' Opt-Out and Internal DNC List Claims (Counts I, II, & IV).

**E. The Court should dismiss Plaintiff's Opt-Out Claims and Internal DNC Claims (Counts I, II, & IV) because the complained of messages are expressly excluded from the TCPA.**

> **a. The complained of messages are health care messages, not prohibited under the TCPA.**

Under FCC Regulations, messages are not prohibited by the Opt-Out regulation or the Internal DNC regulation when they deliver a health care message made by, or on behalf of, a medical provider. 47 C.F.R. § 64.1200(a)(3)(v) *see also id.* § 64.1200(b) (incorporating exceptions to the TCPA under § 64.1200(a)(3)); § 64.1200(d) (incorporating exceptions to the TCPA under § 64.1200(a)(3)). Federal courts in Illinois consider the following factors in determining whether a message delivers a health care message: (1) whether the message concerns a product or service that is ***inarguably health-related***, (2) whether the message is made ***by or on behalf of*** a health care provider to a patient with whom she has an ***established health care treatment relationship***, and (3) whether the message concerns the ***individual health care needs*** of the patient recipient. *See Sullivan v. All Web Leads, Inc.*, 2017 WL 2378079, at **3-4 (N.D. Ill. June 1, 2017).

All factors weigh in favor of finding that the complained of alleged messages are not prohibited by the TCPA. First, as clearly alleged in the FAC, the messages are prescription update notifications, made in direct response to a request from Plaintiffs' doctors, and thus are inarguably health-related. *See* [ECF 6, ¶ 39, 58] (alleging that the messages relate to a "test ordered by your doctor" and a "prescription for the sleep apnea test"). Second, as admitted in the FAC, the messages were sent on behalf of Plaintiffs' doctors, with whom Plaintiffs have an established a health care treatment relationship. *See* [*id.*] Third, the messages concerned Plaintiffs' individual healthcare needs. [*Id.*]

Recognition that the messages are exempted by as "health care messages" corresponds to the findings from other federal courts which held that prescription reminders are not prohibited by

the TCPA. *See, e.g.*, *Gugliemlo v. CVS Pharm., Inc.*, 2021 WL 3291532, at *2 (D. Conn. Aug. 2, 2021) (prescription refill reminders are health care messages); *see also Latner v. Mount Sinai Health Sys.*, 2016 WL 10571897, at *3 (S.D.N.Y Dec. 14, 2016) (flu shot reminders to former patients are health care messages). Accordingly, the Court should dismiss Plaintiffs Opt-Out Claims and Internal DNC Claims (Counts I, II, & IV).

> **b.** **The complained of messages fall within the "emergency purposes" exception to the TCPA.**

Because the complained of messages are for the purpose of filling a prescription and could prevent major health emergencies, the messages also fall under the "emergency purposes" exception. Communications made for emergency purposes are not prohibited by the TCPA. *See* 47 C.F.R. § 64.1200(a)(3)(i); *see also id.* § 64.1200(d) (incorporating exceptions to the TCPA under § 64.1200(a)(3)). Emergency purpose means any communication "made necessary in any situation affecting the health and safety of consumers." *Id.* § 64.1200(f)(4). Under these definitions, prescription update notifications, like the ones Plaintiffs allege were sent by Blackstone, are sent for "emergency purposes" and not prohibited by the TCPA. *See Roberts v. Medco Health Sols., Inc.*, 2016 WL 3997071, at *3 (E.D. Mo. July 26, 2016) ("Calls like the ones here, involving an attempt to confirm or refill a prescription order, . . . fall within the ambit of 'calls made necessary in any situation affecting the health and safety of consumers.'"). Thus, the Court should dismiss Plaintiffs Opt-Out Claims and Internal DNC Claims (Counts I, II, & IV).

> **F.** **To the extent Plaintiffs even attempt to bring a TCFAPA claim, the Court should dismiss Plaintiffs' Telemarketing Abuse Claim (Count II) because Plaintiffs did not comply with the mandatory pre-suit notice requirement.**

As discussed in Section B, the Telemarketing Abuse Claim arises under the TCFAPA, not the TCPA. *See* 16 C.F.R. § 310.1. The notice requirement is mandatory, and courts must dismiss TCFAPA claims that do not comply with such notice. *See Humana Pharm Sol'ns, Inc. v. Michelin*,

2021 WL 3403950, at *10 (S.D. Fla. June 15, 2021). Plaintiffs do not, and cannot, allege that they provided prior written notice to the FTC. Accordingly, the Court should dismiss the Telemarketing Abuse Claim (Count III).

### G. The Court should dismiss Plaintiffs' FTSA Claim (Count V) because Plaintiffs do not plausibly allege that they are "consumers," which is a requirement under the FTSA.

Plaintiffs have not alleged that they are "consumers," which is a prerequisite under the FTSA. Specifically, Plaintiffs cite Section 501.059(5) as authority to bring the FTSA Claim, which states:

> A *telephone solicitor* or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission . . . . (emphasis added)

Furthermore,

> "Telephone solicitor" means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a *telephonic sales call*, including, but not limited to, calls made by use of automated dialing or recorded message devices.

Fla. Stat. § 501.059(1)(i) (emphasis added). And,

> "Telephonic sales call" means a telephone call, text message, or voicemail transmission to a *consumer* for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes.

*Id.* § 501.059(1)(j) (emphasis added). The FTSA goes on to define "consumer" as "an actual or prospective purchaser, lessee, or recipient of consumer goods or services." *Id.* § 501.059(1)(b). Plaintiffs do not allege, even in a conclusory fashion, that each Plaintiff is a "consumer."

The Florida Legislature, when enacting the FTSA, could have applied the FTSA to any "individual," instead of any "consumer." Thus, the Legislature intentionally narrowed the scope of the FTSA to apply to only "actual or prospective" purchasers, lessees, or recipients. Because

the FTSA only applies to consumers, Plaintiffs must allege sufficient facts to support a conclusion that each Plaintiff is an "actual or prospective purchaser . . . or recipient" of Blackstone's product. Because Plaintiffs fail to make any such allegations, the Court should dismiss the FTSA Claim (Count V).

**H. The Court should strike Plaintiffs' demand for attorney's fees under the TCPA because the TCPA does not provide for attorneys' fees.**

Under the American Rule, "Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019). Plaintiffs are not entitled to an award of attorneys' fees under the TCPA. *See Holtzman v. Turza*, 828 F. 3d 606, 609 (7th Cir. 2016). Furthermore, Plaintiffs do not cite any contract that provides for an award of attorneys' fees. Therefore, to the extent that Plaintiffs seek attorneys' fees relating to their alleged statutory claims, this Court must strike or dismiss Plaintiffs' demand for attorneys' fees.

WHEREFORE, for all the foregoing reasons, Defendant Blackstone Medical Services, LLC respectfully requests that this Court grant its Rule 12(b)(6) and 12(f) Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, enter an order dismissing Plaintiffs' First Amended Class Action Complaint, enter an order striking the claim for attorneys' fees under the TCPA, and enter an order providing any other such relief the Court deems just and proper.

BLACKSTONE MEDICAL SERVICES, LLC

By: ____*/s/ John P. Heil, Jr.*_____
John P. Heil, Jr. #6237286
HEYL, ROYSTER, VOELKER & ALLEN, P.C.
300 Hamilton Blvd.
P.O. Box 6199
Peoria, IL 61602
Phone: (309) 676-0400
Fax: (309) 420-0402
Email: jheil@heylroyster.com
*Attorneys for Defendant*

14

Traci H. Rollins, Esq.
Florida Bar No. 769071
Stephen C. Richman, Esq.
Florida Bar No. 1015692
Ryan Childress, Esq.
Florida Bar No. 1049623
GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500
West Palm Beach, Florida 33401
Phone: (561) 655-1980
Fax: (561) 655-5677
trollins@gunster.com
srichman@gunster.com
rchildress@gunster.com
*Court membership applications pending*

15

## <u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 3, 2024, the foregoing was electronically filed with the Clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of

record.

*s/ John P. Heil, Jr.*
John P. Heil, Jr.

ACTIVE:21526487v5