E-FILED
Thursday, 12 December, 2024  02:18:37 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

SETH STEIDINGER and NATASHA KOLLER, *on behalf of themselves and all others similarly situated,* )
)
)
)

      Plaintiffs, )    Case No. 1:24-cv-1074
)

      v. )
)

BLACKSTONE MEDICAL SERVICES, LLC, )
)
)

      Defendant. )

## ORDER & OPINION

This matter is before the Court on motion by Defendant Blackstone Medical Services, LLC to dismiss Plaintiffs' FAC pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure. (Doc. 9). Defendant filed a memorandum in support of its Motion (doc. 10); Plaintiffs responded (doc. 12). This matter is therefore ripe for review. For the following reasons, Defendant's Motion is granted to the extent Counts I–IV are dismissed without prejudice.

### BACKGROUND

Plaintiffs Seth Steidinger and Natasha Koller bring the instant lawsuit on behalf of themselves and all others similarly situated, alleging violations of both the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059(5) ("FTSA"), against Defendant Blackstone Medical Services, LLC. (Doc. 6). The allegations stem from various text messages communicated from Blackstone employees or representatives

to Plaintiffs regarding at-home sleep studies. (Doc. 6 at 1–4). In the First Amended Complaint ("FAC"), Plaintiffs seek to certify and represent three classes in this action. (Doc. 6 at 3–4).

The facts common to both Plaintiffs detail that Defendant is a Florida-based entity with a principal place of business in Tampa, Florida, operating "an aggressive telemarketing campaign where it repeatedly sends text messages and phone calls" to numbers listed on the National Do Not Call Registry and those who request not to be contacted. (Doc. 6 at 2, 5). Plaintiffs allege that Defendant sells home sleep tests and "is a sales company, not a healthcare provider." (Doc. 6 at 1). Numerous online reviews are included in the pleading, which paint the picture that consumers other than Plaintiffs have had negative experiences with Defendant's contact methods. (*See* doc. 6 at 3, 18–20) (copying an online review that states "[t]his company will NOT STOP calling and texting us, even though we have repeatedly told them to stop" and "they still continue to send me messages and calls and it is frustrating").

Plaintiff Steidinger, an Illinois resident, was first contacted by Defendant after his health care provider discussed the option of a sleep test; Defendant reached out to offer Steidinger an at-home option for the cost of one hundred dollars. (Doc. 6 at 9). After he declined, Steidinger received repeated text messages and calls from different representatives working for Defendant. (Doc. 6 at 9–12). After replying "stop" to the messages, Plaintiff Steidinger continued to receive communications from Defendant, causing him frustration. (Doc. 6 at 10–12). At all relevant times, Steidinger's phone number was properly listed on the National Do Not Call Registry. (Doc. 6 at 9).

Plaintiff Koller, a Florida resident, has similar allegations. Defendant obtained Koller's personal phone number from her physician, who recommended Defendant as a provider to perform a sleep study. (Doc. 6 at 14). Koller maintains that she did not provide consent to be contacted by Defendant. (Doc. 6 at 14). Text messages from multiple representatives of Defendant began to flood Koller's cell phone, and did not cease when she texted "stop" to opt out of the messages, or after she called Defendant to request her number be removed from the lists. (Doc. 6 at 15–16). Like Steidinger, Koller experienced frustration, an invasion of privacy, annoyance, and aggravation. (Doc. 6 at 21).

The operative pleading brought by Plaintiffs Steidinger and Koller contains five claims against Defendant. Count I alleges Defendant violated 47 C.F.R. § 64.1200(c)(2) and (d)(3) and the TCPA by initiating more than one solicitation message to the phone numbers belonging to Plaintiffs, even though the phone numbers were on the National Do Not Call Registry. (Doc. 6 at 25–27). In Count II, which alleges violations of the same statutory provisions and regulations as Count I, Plaintiffs accuse Defendant of willfully and knowingly initiating messages to the telephone numbers belonging to Plaintiffs after each requested not to be contacted. (Doc. 6 at 27–29). Count III is an abusive telemarketing claim for placing calls and messaging Plaintiffs after they requested for Defendant to stop. (Doc. 6 at 29–30). In Count IV, Plaintiffs allege violations of the TCPA and 47 C.F.R 64.1200(b)(3), contending that Defendant failed to have an "opt-out" mechanism in the messages. (Doc. 6 at 30–31). Count V is brought under the FTSA and alleges that Defendant

3

failed to stop sending messages to Plaintiff Koller and putative class members. (Doc. 6 at 31–32). Plaintiffs seek damages and injunctive relief. (Doc. 6 at 33). Defendant moves to dismiss all claims against it. (Docs. 9, 10).

**LEGAL STANDARD**

## I. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "a short and plain statement" of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss, the Court construes a complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true "and 'draw[ing] all reasonable inferences from those facts in favor of the plaintiff.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016)). Those statements which are legal conclusions rather than factual allegations are not taken as true but are disregarded at this stage. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## II. Telephone Consumer Protection Act

Congress passed the TCPA in 1991 to address "the proliferation of intrusive, nuisance calls to consumers and businesses alike from telemarketers." *Facebook, Inc.*

4

*v. Duguid*, 592 U.S. 395 (2021) (internal quotation marks and citation omitted); *see also* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5), 105 Stat. 2394, 2394 (1991) (finding "[u]nrestricted telemarketing" was "an intrusive invasion of privacy"). The TCPA consists of two subsections: Sections 227(b) and 227(c) of Title 47 of the U.S. Code.

Section 227(b) makes it "unlawful for any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice," except in an emergency or with the recipient's prior consent, to several enumerated categories of phones. 47 U.S.C. § 227(b)(1)(A). The Federal Communications Commission ("FCC") is required to "prescribe regulations to implement the requirements of this subsection," which are found at 47 C.F.R. § 64.1200(a)–(b). A private right of action was created and is "based on a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3).

Section 227(c), which is relevant here, addresses telephone solicitations that intrude on the privacy of the receiver, regardless of whether they are transmitted by an automatic telephone dialing system or an artificial or prerecorded voice; therefore, it has a markedly different scope and structure. Section 227(c) required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This section permits the FCC to establish and operate "a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make

that compiled list and parts thereof available for purchase." 47 U.S.C. § 227(c)(3). The FCC exercised its authority by promulgating regulations that established a National Do Not Call Registry. As Congress mandated, those regulations prohibit any "person or entity" from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

Moreover, the regulations prohibit any "person or entity" from "initiat[ing] . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Section 227(c) confers a private cause of action on any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).

## DISCUSSION

As stated, Plaintiffs allege Defendant violated various sections of the TCPA and the FTSA. (Doc. 6). The Court is authorized to address Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and § 1367. Defendant puts forth numerous arguments calling for dismissal of the action, and asks this Court to strike Plaintiffs' demand for attorneys' fees. (Doc. 10).

As an initial note, Defendant makes an overarching critique of the way Plaintiffs' incorporate by reference and author their pleading. (Doc. 10 at 4–6). In doing so, Defendant is referring to the phrase at the start of each count, which is that Plaintiffs "repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference." (Doc. 6). It complains that this type of "shotgun" pleading fails to provide it with notice of the claims against it in violation of the Federal Rules of Civil Procedure.[1]

"Shotgun" pleading is a "style in which each count of the complaint 'incorporates by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged are not material to the claim, or cause of action, appearing in a count's heading.' " *See United States Sec. & Exch. Comm'n v. Winemaster*, 529 F. Supp. 3d 880, 906 (N.D. Ill. 2021*)* (quoting *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011)). Incorporation by reference of each of the preceding factual allegations does not amount to impermissible pleading so long as the complaint gives the defendant sufficient notice. *See Winemaster*, 529 F. Supp. 3d at 907 (noting that the pleading only becomes insufficient when multiple defendants are grouped together and fails to state which defendant did which fraudulent act).

---

[1] Defendant includes another argument as to why Plaintiff's Complaint fails to provide notice of the claims against it: Plaintiffs conflate the TCPA with the Telephone and Consumer Fraud and Abuse Prevention Act in Count III. This argument is no longer relevant and need not be addressed, as Plaintiffs agreed to dismiss that claim.

Plaintiffs' incorporation of and reference to the preceding allegations does not make the FAC sufficiently confusing to warrant dismissal on this basis, and the Court disagrees that it fails to put Defendant on notice of the claims. Each claim shares factual allegations that are relevant to whether Defendant violated the various provisions of the TCPA or the FTSA. Moreover, there is only one defendant named in this lawsuit—there is no confusion as to which allegations apply to Blackstone. While the FAC could have been pleaded more carefully, with the incorporation of only the relevant factual allegations and not the preceding counts, the Court rejects Defendant's argument that this is merely a "shotgun" pleading that fails to give proper notice of the claims.

However, part of this argument related to pleading standards has merit. Defendant states that Plaintiff alleges more than one theory of liability under Counts I and II. While pleading alternative theories of liability is allowed, Plaintiffs allege *two separate claims* under the TCPA in Count I— violations of both the National Do Not Call Registry and Internal Do Not Call List. Defendant is correct that these types of claims have different elements and should be separated into individual counts. The same is true for Count II. Additionally, Defendant correctly points out that Plaintiffs do not clearly allege which plaintiff and which class will bring each claim, and the Court agrees to give Plaintiffs the opportunity to clarify. For these reasons, Counts I and II are dismissed without prejudice—Plaintiffs may amend their pleading to resolve and clarify these raised issues.

For purposes of efficiency, the remainder of Defendant's arguments related to dismissal will be addressed. In seeking dismissal, Defendant raises various affirmative defenses, like prior consent, and the application of two exemptions set out by the FCC. As a reminder, affirmative defenses "typically turn on facts not before the court at [the dismissal] stage" and Defendant bears the burden of proof. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

## I. Whether the Messages Encouraged the Purchase of Goods or Services (All Counts)

Defendant first outlines an argument that Plaintiffs have failed to allege that the complained-of messages encouraged or solicited the purchase of consumer goods or services, calling for the dismissal of the FAC in its entirety, as this deficiency would sink any claim under the TCPA or FTSA. (Doc. 10 at 2–4). In more detail, Defendant contends that the pleading fails to allege that the messages were anything more than a "follow up to a doctor-ordered at-home sleep test," and did not require Plaintiffs to pay for the service; thus, the communications were not in the purpose of encouraging the purchase of goods or services, and not actionable under the TCPA or FTSA. (Doc. 10 at 2–3).

Under the TCPA, "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." 47 C.F.R. § 64.1200(c)(2). Telephone solicitation is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is

9

transmitted to any person." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Here, Defendant conveniently ignores the allegations that Plaintiff Steidinger was offered a sleep test for one hundred dollars in his first phone call with a Blackstone representative. (*See* doc. 6 at 9). It also disregards the allegations that Defendant is a "sales company," sending messages "for the purpose of soliciting the sale of its sleep study, which is a consumer good or service." (Doc. 6 at 1, 14). At this stage of the proceedings, the allegations put forth by Plaintiffs must be accepted as true. The Court cannot say that Defendant was simply advising Plaintiffs about the availability of free services and not encouraging them to make purchases when making all plausible inferences in Plaintiffs' favor.[2] The FAC includes factual allegations that demonstrate the messages met the definition of a telephone solicitation, and Defendant's argument to the contrary is rejected.

## II. Do Not Call Registry and Internal Do Not Call List Claims (Counts I & II)

The next argument put forth by Defendant is that the communications were sent with Plaintiffs' prior express consent; therefore, the messages were not a violation of the TCPA and the Court should dismiss Counts I and II. (Doc. 10 at 6–8).

---

[2] The caselaw Defendant cites in support of this argument is not convincing, as the Court is not deploying the standards attendant to a motion for summary judgment. In *Hulce v. Zipongo*, 2024 WL 1251108, at *3 (E.D. Wis. Mar. 18, 2024), the court granted the defendant's motion for summary judgment, and resolved issue of whether the communications met the definition of telephone solicitation after the completion of discovery. Given that dismissal motions are evaluated only on the facts that are alleged in complaints, it is not surprising that the consideration of whether a message is made for the purpose of encouraging or soliciting purchases benefitted from a discovery record, which allows the specifics of the defendant's business to be fleshed out.

Defendant contends that the FAC demonstrates express consent to receive messages because each Plaintiff "provided their doctor with their phone number" and "discussed with their doctor the possibility of receiving a sleep study." (Doc. 10 at 7). According to Defendant, these two actions equal express consent to receive messages from Blackstone representatives. (Doc. 10 at 8). In the Seventh Circuit,

> [t]he prevailing view . . . is that "prior express consent" under the TCPA "is an affirmative defense on which the defendant bears the burden of proof; it is not a required element of the plaintiff's claim." *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174, at \*2 (N.D. Ill. Feb. 10, 2014) (collecting cases). Because complaints need not anticipate and defeat affirmative defenses, dismissal is typically only appropriate if the affirmative defense "is set out entirely in the plaintiff's complaint." *Ibid.* For this reason, courts reject a TCPA defendant's attempt on a Rule 12(b)(6) motion to argue consent contrary to express allegations in a complaint or attack a complaint for not pleading lack of consent. *See, e.g., Charvat v. Allstate Corp.*, 29 F.Supp.3d 1147, 1149 (N.D. Ill. 2014); *Thrasher-Lyon*, 861 F.Supp.2d at 905; *Greene v. DirecTV, Inc.*, No. 10 C 117, 2010 WL 1506730, at \*2 (N.D. Ill. Apr. 14, 2010).

*Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at \*4 (N.D. Ill. June 1, 2017). Although Defendant argues that the allegations establish prior express consent, the Court does not agree, and need not delve into a detailed analysis of consent on a motion to dismiss. Plaintiffs have pleaded that they did not consent to be contacted by Defendant's representatives. (*See* doc. 6 at 13, 14) (alleging in part that "Plaintiff Steidinger was damaged by Defendant's uncontested text messages and calls" and "Plaintiff Koller did not give her physician permission to convey to Blackstone that Plaintiff Koller consented to Blackstone's calls").

Defendant's characterization of the pleading and cited authority is misleading and borders inaccuracy. While it is correct that "if an individual gives consent to

receive communications, the recipient of such consent may convey that consent to a third-party, as long as the third-party acts within the scope of the original consent," that is not what Plaintiffs allege occurred. (Doc. 10 at 7) (citing *In re GroupMe, Inc.*, 29 FCC Rcd. 3442, 3445 (2014)). To argue that the allegations within the FAC squarely establish prior consent at this stage of proceedings is a waste of judicial resources. The affirmative defense of consent is nowhere to be found within the four corners of the pleading; Defendant cannot meet this burden. This argument for dismissal is rejected.

## III.    Opt-Out and Internal Do Not Call Claims (Counts I, II, IV)

In seeking dismissal of Counts I, II, and IV, Defendant argues that Plaintiffs fail to allege all necessary elements, and that the communications fall under statutory exemptions and bar the claims. First, Defendant contends that Plaintiffs fail to allege that Defendant used an "automatic telephone dialing system" or an "artificial or prerecorded voice" necessary to subject the communications to the regulations. (Doc. 10 at 8). Second, it states that the messages are "expressly excluded from the TCPA" because the communications were for "emergency purposes" and because a health-care-related exemption applies. (Doc. 10 at 11, 12).

   *A.    Whether Plaintiffs allege an "automatic telephone dialing system" or other artificial or prerecorded voice was used*

The contention that Plaintiffs must allege Defendant's representatives used either an automatic dialing system or a prerecorded voice, requiring dismissal of the Opt-Out and Internal Do Not Call claims, is misplaced as to Counts I and II, but correctly calls for dismissal of Count IV. (*See* doc. 10 at 8–10).

Defendant is correct that Section 227(b) requires the recipient to plead that such system or other artificial or prerecorded voice was used by the caller. However, that does not preclude Plaintiffs from stating a claim under Section 227(c), which prohibits certain calls regardless of whether they are transmitted by an automatic telephone dialing system or an artificial or prerecorded voice. In more detail, Counts I and II allege that Defendant violated 47 C.F.R. § 64.1200(c)(2) and (d)(3)—regulations promulgated by Congress under the authority found within Section 227(c) of the TCPA. Therefore, it is not necessary for Plaintiffs to plead that Defendant used an automatic telephone dialing system or an artificial or prerecorded voice to state a claim in Counts I and II. This part of Defendant's Motion to Dismiss is denied.

However, Plaintiffs' Count IV is brought pursuant to 47 C.F.R. § 64.1200(b)(3), a regulation related to Section 227(b), which monitors "artificial or prerecorded voice telephone messages" and does not prohibit communications by representatives. It states:

> All artificial or prerecorded voice telephone messages shall . . .
>
> (3) In every case where the artificial or prerecorded-voice telephone message is made pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or includes or introduces an advertisement or constitutes telemarketing and is delivered to a residential telephone line or any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request . . . .

47 C.F.R. § 64.1200(b)(3).[3] From the plain language of the regulation, the scope of this provision does not cover the type of communications alleged by Plaintiffs' in Count IV. *See also Rojas v. First Party for Bolingbrook*, No. 23 C 5049, 2024 WL 1254575, at *1 (N.D. Ill. Mar. 25, 2024) (analyzing what constitutes an automatic telephone dialing system and whether the plaintiff stated a TCPA claim under Section 227(b)).

It bears mentioning that Plaintiffs cite Section 227(c) as a basis for bringing Count IV. (*See* doc. 6 at 30) ("Under the TCPA, 47 U.S.C. § 227(c)(5), a person may bring a claim for receiving more than one call in a 12-month period in violation of rules and regulations prescribed under 47 U.S.C. § 227(c)."). That does not negate that their cited regulation, 47 C.F.R 64.1200(b)(3), requires them to plead certain elements related to an "opt-out" claim. If Plaintiffs intended to bring another claim under Section 227(c), then they may plead such claim with the correct corresponding regulation in their next amended pleading. Therefore, Count IV is dismissed without prejudice.

---

[3] Plaintiff directs the Court to consider that the language "or constitutes telemarketing and is delivered to a residential telephone line" allows them to bring a claim that does not allege the caller used an automatic dialing system or prerecorded or artificial voice. (Doc. 12 at 18). However, Plaintiffs do not cite any authority in which a court allowed a similar claim to go forward—the case they do cite, *Liotta v. Wolford Boutiques, LLC*, No. 1:16-CV-4634, 2017 WL 1178083 (N.D. Ga. Mar. 30, 2017), does not address the issue, and instead assumes that it was an "artificial or prerecorded telephone message[]." Plaintiffs' argument that 47 C.F.R. § 64.1200(b)(3) captures this type of communication is rejected.

*B.* *Whether the messages are excluded from the TCPA under the health care exemption*

Defendant invokes one of the two health care exemptions promulgated by the FCC, the "Health Care Rule," which is codified at 47 C.F.R. § 64.1200(a)(2). It includes:

> No person or entity may: . . . Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers [listed, including cellular telephone lines], other than a call made with the prior express written consent of the called party *or the prior express consent of the called party* when the call is made by or on behalf of a tax-exempt nonprofit organization, *or a call that delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,'* as those terms are defined [by HIPAA].

47 C.F.R. § 64.1200(a)(2) (emphasis added).[4] In moving for dismissal of Counts I, II, and IV, Defendant argues that the communications to Plaintiffs fall under this exemption, as the factors weighed by federal courts in this circuit lean in its favor. (Doc. 10 at 11–12); *see Murtoff v. My Eye Dr., LLC*, No. 1:21-CV-02607, 2022 WL 889004, at *2–3 (N.D. Ill. Mar. 26, 2022) (outlining the factors as (1) whether the message "concerns a product or service that is inarguably health-related," (2) whether the message is "made by or on behalf of a health care provider to a patient with whom she has an established health care treatment relationship," and (3) whether the

---

[4] Defendant's Motion cites 47 C.F.R. § 64.1200(a)(3)(v) when arguing for dismissal under the Health Care Rule. (Doc. 10 at 11). However, the Court notes that § 64.1200(a)(3)(v) contemplates phone calls placed with "an artificial or prerecorded voice" to *residential* lines. That is not what is pleaded in the FAC—Plaintiffs both allege that they were contacted on their cell phone, and Defendant makes no argument as to why the Court should apply that provision, and not the exemption found in § 64.1200(a)(2), which discusses prohibitions on calls to cell phones and other sensitive numbers.

message "concerns the individual health care needs of the patient recipient"). Plaintiffs respond that not only do the messages fail to satisfy the factors, but Defendant's ignorance of Plaintiffs' attempts to "opt-out" render this exemption inapplicable, as prior express consent did not exist, and even if it did, it was revoked. (Doc. 12 at 19–23).

While the parties have briefed whether the messages fall under the exemption, Plaintiffs are correct that the implicated provision "exempt[s] [such calls] from the written consent requirement" but not from consent entirely. *Zani v. Rite Aid Hdqtrs. Corp.*, 246 F. Supp. 3d 835, 845–46 (S.D.N.Y. 2017) *aff'd*, 725 F. App'x 41 (2d Cir. 2018). In other words, Defendant still needed prior express consent from Plaintiffs to contact them. The allegations expressly include that Plaintiffs never gave consent, and that even if they did, it was revoked on numerous occasions. These statements are taken as true, and defeat Defendant's attempt to invoke this exemption regardless of whether the messages meet the factors. *See also Morris v. Lincare, Inc.*, No. 8:22-CV-2048, 2024 WL 2702101, at *3 (M.D. Fla. May 24, 2024) (rejecting the application of this exemption where the issue of prior express consent could not be resolved on a motion to dismiss). Defendant's Motion is denied.

C.   *Whether the messages are excluded from the TCPA under the emergency purposes exemption*

Defendant next looks to the emergency purposes exemption, another affirmative defense, for dismissal of Counts I, II, and IV. (Doc. 10 at 12). The argument is that the text messages and calls to Plaintiffs were "prescription update notifications," and fall under the TCPA's definition of communications made for an

emergency purpose. (Doc. 10 at 12). *See* 47 C.F.R. § 64.1200(f)(4) (defining emergency purpose as any communication "made necessary in any situation affecting the health and safety of consumers"). Although, within the FAC, Plaintiffs specifically allege that "[n]one of Defendant's messages to Plaintiff Steidinger's were for an emergency purpose" and do not include facts that support Defendant's argument that any of the messages sent to either Plaintiff may fall under this exemption. (Doc. 6 at 13).

As discussed, the TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . ." 47 U.S.C. § 227(b)(1)(A). The Court finds the recent analysis in *Lewerentz v. 1411 State Parkway Condo. Association* to be useful and rejects Defendant's argument for dismissal. No. 23-CV-1635, 2024 WL 4063912 (N.D. Ill. Sept. 5, 2024). There, the court declined to apply this exemption on a motion to dismiss, as the affirmative defense was not evident on the face of the complaint. *Id*. The same is true here—as Plaintiffs did not include allegations that establish the calls were for an emergency purpose—Defendant cannot meet its burden of establishing the defense at this stage, and dismissal on these grounds would be inappropriate.

Further, like the caller in *Lewerentz*, Defendant fails to reconcile recent holdings establishing that the emergency purposes exception "does not apply to calls made after [Plaintiff] told [Defendant] to stop calling him." 2024 WL 4063912, at *3 (citing *Coleman v. Rite Aid of Georgia, Inc.,* 284 F. Supp. 3d 1343, 1347 (N.D. Ga. 2018)). As dismissal is only appropriate when the "plaintiff pleads himself out of court

by alleging facts sufficient to establish" the defense, *Sidney Hillman Health Ctr. v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015), the Court denies Defendant's Motion.

There is another issue regarding both the Health Care Rule and the emergency purposes provision that was not raised by the parties. The cited provisions were designed to exempt autodialed or prerecorded calls, 47 C.F.R. § 64.1200(a)(2); (a)(3), and the FAC does not allege that any of the messages received by Plaintiffs were automated, prerecorded, or used an artificial voice. Defendant does not explain how either the Health Care Rule or the emergency purposes provision apply to types of calls and messages alleged by Plaintiffs. If Defendant intends to invoke these exemptions after the parties engage in discovery, it must ensure the communications fall under the scope of the provision.

## IV.    Telemarketing Abuse Claim (Count III)

Defendant contends that Plaintiffs have failed to meet the notice requirements for bringing a telemarketing abuse claim. (Doc. 10 at 12–13). Plaintiffs, in response, agree to withdraw this claim. (Doc. 12 at 2, n.1). Count III is dismissed without prejudice.

## V.    FTSA Claim (Count V)

The last claim is brought under the Florida statute. Defendant moves to dismiss Count V due to Plaintiff Koller's purported failure to plead that she is a consumer, as required to state a claim under the FTSA. (Doc. 10 at 13). Plaintiff Koller responds by pointing out that she alleged that Defendant was attempting to sell her an at-home sleep test, making her, by reasonable inference, a "consumer."

18

(Doc. 12 at 25). The Court agrees with Plaintiff Koller. The FAC plainly establishes that Defendant sent Koller "messages intended to solicit the sale of sleep studies and other services," and that sleep studies are "consumer goods or services." (Doc. 6 at 32). Drawing all reasonable inferences in favor of Plaintiffs, as required at this stage of the proceedings, the Court finds that these allegations are more than sufficient to allege that Plaintiff Koller is a consumer. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). Defendant's invitation to make Plaintiff Koller jump through unnecessary hoops is rejected; the Motion is denied as to Count V.

## VI. Demand for Attorneys' Fees

Defendant lastly asks this Court to strike Plaintiffs' demand for attorneys' fees, invoking Rule 12(f) of the Federal Rules of Civil Procedure. (Doc. 10 at 14). This rule provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, Rule 12(f) is not a proper way to procure the dismissal of part of the complaint. *Pierson v. Dean, Witter, Reynolds, Inc.*, 551 F.Supp. 497, 504 (C.D. Ill. 1982); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010) ("We hold that Rule 12(f) of the Federal Rules of Civil Procedure does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law.").

As motions to strike are disfavored, "a court ordinarily will not strike a matter unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party." *Fed. Nat'l Mortgage Ass'n v. Cobb*,

19

738 F.Supp. 1220, 1224 (N.D. Ind. 1990). In moving to strike matters as irrelevant, a defendant must clearly show that the matter is outside the issues in the case and is prejudicial. *Cumis Ins. Soc'y Inc. v. Peters*, 983 F.Supp. 787, 798 (N.D. Ill. 1997). Defendant has not clearly shown that this type of relief is irrelevant to the matter at hand or in any way "redundant, immaterial, impertinent, or scandalous" as required to engage Rule 12(f). *See Driveaway and Truckaway Serv., Inc. v. Aaron Driveaway & Truckaway Co., Inc.*, 781 F.Supp. 548, 549–50 (N.D. Ill. 1991) ("Plaintiffs' prayer for punitive damages is neither a defense, redundant, immaterial, impertinent, nor scandalous . . . Rule 12(f) is inapplicable."). Therefore, the Court declines to strike the requested relief.

Further, the Court denies any request to dismiss this relief from the Complaint under Federal Rule of Civil Procedure 12(b)(6). In response to Defendant's Motion, Plaintiffs disagree that they cannot recover this type of relief, admitting that while the TCPA is not a fee-shifting statute, courts may award attorneys' fees "pursuant to rules governing class actions." *Craftwood II, Inc. v. Wurth Louis & Co.*, No. 170606, 2017 WL 4286605, at *9 (C.D. Cal. Sept. 20, 2017). Regardless of disagreement under the TCPA, Plaintiffs' bring a claim under the state statute—which allows the prevailing party to recover reasonable attorneys' fees and costs—and that is enough for survival at this stage. *See* Fla Stat. § 501.059(11)(a) ("In any civil litigation resulting from a transaction involving a violation of this section, the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, shall receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

Therefore, Defendant's request to dismiss Plaintiffs' request for attorneys' fees is denied.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (doc. 9) is GRANTED in part and DENIED in part. Counts I, II, III, and IV of Plaintiffs' FAC (doc. 6) are dismissed without prejudice. Plaintiffs may file an amended pleading within twenty-one (21) days of the date of this Order. Defendant may file an answer within fourteen (14) days of the filing of the amended pleading.

SO ORDERED.

Entered this 12th day of December 2024.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
