**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br>v.<br><br>Blackstone Medical Services, LLC<br><br>Defendant. | Case No. 24-cv-01074<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs Seth Steidinger (hereinafter "Plaintiff Steidinger") and Natasha Koller (hereinafter "Plaintiff Koller" and collectively with Plaintiff Steidinger "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Blackstone Medical Services, LLC as follows:

## <u>INTRODUCTION</u>

1.      Plaintiffs bring this class action for damages resulting from the illegal actions of Defendant Blackstone Medical Services, LLC ("Defendant" or "Blackstone").  Defendant placed repeated telemarketing text messages and calls to Plaintiffs' telephones – over Plaintiffs' requests for Defendant to stop – in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(5), thereby invading Plaintiffs' privacy.

2.      Defendant is a Florida-based company that aggressively sells home sleep tests.  It is a sales company, not a healthcare provider.  Its website identifies no physicians or other medical

professional on its staff.[1]  Instead, Blackstone employs hundreds of people for positions such as "Inside Sales Professional" to contact people to sell home sleep tests.[2]

3.      Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls to telephone numbers that have been placed on the National Do-Not-Call Registry for at least 30 days and over the messaged party's objections in order to sell home sleep tests.

4.      Indeed, after Plaintiff Steidinger's telephone number was added to the National Do-Not-Call Registry and after Plaintiff Steidinger advised Blackstone he was not interested in its home sleep tests and repeatedly messaged Blackstone to "STOP," Blackstone continued to place repeated telemarketing text messages encouraging Plaintiff to contact Blackstone and purchase an at home sleep test (e.g., "Hi, this is Juliana from Blackstone Medical Services! Are you ready for the Home Sleep test?"; "Hi, we still got your prescription for the sleep apnea test. We have made several attempts to get a hold of you to set it up. Please call back at 813-708-7651 to schedule. Best regards!").

5.      Plaintiff Koller also repeatedly requested Blackstone to "STOP" sending her its solicitation text messages but Defendant continued to place repeated telemarketing text messages encouraging Plaintiff to contact Blackstone.

---

[1] *See* https://www.blackstonemedicalservices.com/vick-tipnes/ (last visited Feb. 13, 2024); https://www.blackstonemedicalservices.com/about/ (last visited Feb. 13, 2024); https://www.blackstonemedicalservices.com/executives/ (last visited Feb. 13, 2024) (identifying executives as a business consultant, director of sales, general counsel, and HR manager)

[2] *See, e.g.,* https://www.ziprecruiter.com/c/Blackstone-Medical-Services/Job/Inside-Sales-Representative/-in-Tampa,FL?jid=8653af6305b08a6d&utm_campaign=google_jobs_apply&utm_source=google_jobs_apply&utm_medium=organic (Blackton's job posting seeks a "high energy Inside Sales Professional") (last visited Feb. 13, 2024).

6. Plaintiffs are not alone. Other consumers complain about Blackstone's aggressive telemarketing and failure to abide by 'stop' requests. *See, e.g.,* the following representative Yelp reviews:[3]

- "This company has been sending me text messages and phone calls at least three times a day about getting a sleep study done. I have expressed that I do NOT want the test done, as I have already gotten it done with another provider. They still continue to send me messages and calls and it is frustrating. It is as if they will not take no as an answer."

- "My doctor referred me for a home sleep study, so they reached out to me. I'll give the doctor the benefit of the doubt that he just enters a referral into a system and doesn't know what company will be fulfilling the order/service. They have been calling and texting multiple times a day for weeks on end. No matter how many times you say 'No', they will pass your info to someone else in their call center to blow up your phone. Unless you can block the entire 813 area code, they have an endless supply of numbers to circumvent your attempt to avoid them."

- "This company will NOT STOP calling and texting us, even though we have repeatedly told them to stop. Every time we block their number they text or call from another number!"

- "This is a very sketchy company. I was curious about doing a sleep study, so heard more information. After reading some bad reviews and discussing it with my doctor, I decided to hold off doing the study. Now I am bombarded with calls/texts asking me if I want to move forward even after telling them I am no longer interested. It's been over a month and I still receive texts from them. They also text from different numbers, so blocking them won't help. Very sketchy and so glad I didn't go with them."

- "This company is the worst. They have consistently harassed me even though I have turned down their services. I blocked their number and they use another number to text. DO NOT give them your number. Do your research, this company is not trustworthy."

7. This action seeks to certify three classes. Plaintiffs Koller and Steidinger seek to represent the following class:

> **Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

---

[3] https://www.yelp.com/biz/blackstone-medical-services-tampa (last visited Feb. 13, 2024).

Plaintiff Steidinger seeks to represent the following class:

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

And Plaintiff Koller seeks to represent the following class:

**FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

## JURISDICTION

8.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 as this action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et. seq.* (the "TCPA") and 47 C.F.R. § 64.1200.

9.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as the state law claims under the FTSA form part of the same case or controversy as Plaintiffs' claims under the TCPA.

10.     The Court has personal jurisdiction over Defendant and the venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff Steidinger resides in this District and received the communications from Defendant that form the basis of his claims within this District. Numerous putative class members from all three classes reside in this District and Defendant continuously called persons within this District for the purpose of marketing selling, and did in fact sell, medical equipment.

## PARTIES

11.     Plaintiff Steidinger is an adult individual residing in Gridley, Illinois, and is a "person" as defined by 47 U.S.C. § 153(39).

12.     Plaintiff Koller is a natural person who, at all times relevant to this action, was a resident of the State of Florida, and is a "person" as defined by 47 U.S.C. § 153(39).

13.     Defendant, Blackstone Medical Services, LLC, is a Florida business entity with a principal place of business at 550 North Reo Street, Suite #250, Tampa, Florida 33609, and is a "person" as defined by 47 U.S.C. § 153(39).

## OVERVIEW OF THE TCPA AND THE FTSA

14.     Enacted in 1991, at 47 U.S.C. § 227, *et seq.*, "Senator Ernest Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991)." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

15.     Likewise, the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, was amended in 2021 to further protect consumers from these intrusive nuisance calls by creating a private right of action for do-not-call violations, allowing the recovery of $500 to $1,500 per call in statutory damages.

16.     "Unrestricted telemarketing," Congress later determined, "can be an intrusive invasion of privacy." *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

17.     "Congress determined [this] federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.*

5

18. In part, the TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d).

19. The FCC has recognized that the TCPA and implementing regulations apply to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls[.]" *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 14115 (2003).

20. The procedures instituted must meet certain minimum standards, including, but not limited to: (1) having a written policy, available on demand, for maintaining a do-no-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; (6) maintaining a record of requests not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. *Id.*

21. This provision is applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

22. "To constitute telemarketing, the text message must be 'for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.'" *Id.* (quoting 47 C.F.R.§ 64.1200(f)(12)).

23. The term "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property,

goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4).

24.     In general, courts have also found that text messages fall under § 64.1200(d). *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1124 (W.D. Mo. 2020) (denying motion for summary judgment which argued that "§ 64.1200(d) does not apply to receipt of text messages on a cell phone but rather solely applies to calls made to a 'residential telephone subscriber'); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1069 (W.D. Mo. 2019).

25.     The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violation." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶13 (1995).

26.     The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al, for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("FCC 2013 Ruling")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6548 ¶28.

27.     Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).

28.     The FCC has specifically ruled that a consumer's prior express consent to receive future text messages may be revoked. *In the Matter of Rules & Reguls. Implementing the Tel.*

*Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 15391, 15391 (2012) ("*In re SoundBite Communications, Inc.*").

## THE NATIONAL DO-NOT-CALL REGISTRY

29. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

30. A listing on the Do-Not-Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

31. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Do-Not-Call Registry and provides a private right of action against any entity that initiated more than one such telephone solicitation within any 12-month period. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

32. In addition, the TCPA and implementing regulations prohibit the initiation of any call for telemarketing purposes to a residential telephone subscriber where the caller does not, *inter alia,* "honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(3).

33. Telephone solicitations under 47 C.F.R. § 64.1200(c)(2) include text messages and "a cell phone is presumptively residential." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). *See* 47 C.F.R. § 64.1200(e) ("The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers").

## PLAINTIFF STEIDINGER'S FACTUAL ALLEGATIONS

34.     Plaintiff Steidinger registered his residential cellular telephone number, 217-XXX-6904 (the "6904 Number") with the National Do-Not-Call Registry on April 18, 2018.

35.     At all relevant times, Plaintiff Steidinger used the 6904 Number for personal and residential purposes.

36.     After discussing potentially taking a home sleep test with Plaintiff Steidinger's healthcare provider (who is not Blackstone or a Blackstone employee), Plaintiff Steidinger began receiving telephone calls and text messages to his 6904 Number from Blackstone. During his first and only live conversation with Blackstone, Blackstone told Plaintiff Steidinger that he could receive a home sleep test for $100. Plaintiff Steidinger replied that he was not interested. Despite Plaintiff advising Blackstone that he was not interested in the home sleep test, Blackstone proceeded to send repeated telephone solicitation text messages and telephone calls to Plaintiff Steidinger's 6904 Number.

37.     As depicted in the below screenshots, Blackstone's text messages encourage Plaintiff Steidinger to contact Blackstone in order to pay for a home sleep test. *See, e.g.*:

Hi, we have made several attempts to reach you regarding your Sleep Apnea Test without a response. At this time, we will be canceling the order and sending a decline notice to Dr. or PHA. If you do wish to proceed with the Sleep Study, please get back to me ASAP. 813-596-5845

Mon, Oct 2 at 11:35 AM

Hi! This is a message from Blackstone Medical Services. We are available to assist you scheduling the home sleep test ordered by your doctor. Are you available for a quick call? You can call me at (813) 596-5830

Mon, Oct 2 at 5:21 PM

Hi, this is Blackstone Medical Services! I'm reaching out about the Home Sleep Apnea Study your doctor ordered for you. Are you still on board with it? Just checking.

Stop

Text Message
Fri, Oct 20 at 4:38 PM

We are almost in December your benefits may change call us now to schedule your Home Sleep Test. Please call to my direct line 813-596-5850

The sender is not in your contact list

Text Message
Fri, Nov 3 at 3:46 PM

Hi, we still got your prescription for the sleep apnea test. We have made several attempts to get a hold of you to set it up. Please call back at 813-708-7651to schedule. Best regards!





11



38. On repeated occasions – including on October 2, 2023, October 3, 2023, and November 27, 2023 – Plaintiff Steidinger messaged Defendant "STOP" and "Stop" in order to get Defendant to stop contacting him.

39. However, despite Plaintiff Steidinger's unequivocal instructions that Defendant stop all text messages, Defendant continued to place telemarketing text messages and telephone calls to the 6904 Number as recently as January 2024.

40. Blackstone would also text Plaintiff Steidinger from different phone numbers after he texted "stop."

41. Additionally, by repeatedly messaging Blackstone to "STOP" contacting him, Plaintiff Steidinger terminated any established business relationship that could have existed between the Parties. Indeed, a "subscriber's seller-specific do-not-call request . . . terminates an

12

established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

42. Further, even though Defendant had the ability to program its telephone dialing systems to honor "STOP" requests immediately, Defendant instead deliberately programmed its telephone dialing systems to ignore such requests and continue sending telemarketing messages to consumers for months after receiving a "Stop" request.

43. None of Defendant's messages to Plaintiff Steidinger's were for an emergency purpose.

44. Defendant is not Plaintiff Steidinger's healthcare provider and never rendered any healthcare services to Plaintiff Steidinger.

45. Plaintiff Steidinger was damaged by Defendant's unconsented text messages and calls. In addition to using Plaintiff Steidinger's telephone data, phone storage, and battery life, Plaintiff Steidinger's privacy was wrongfully invaded, and Plaintiff Steidinger has become understandably aggravated with having to deal with the frustration of repeated, unwanted text messages and calls, forcing Plaintiff to divert attention away from other activities.

## PLAINTIFF KOLLER'S FACTUAL ALLEGATIONS

46. Plaintiff Koller is the account holder of a cellular telephone number ending in 8855 (the "8855 Number").

47. Plaintiff Koller is the regular user of the 8855 Number and uses the 8855 Number as her residential telephone line.

48. During the time frame relevant to this Complaint, Blackstone caused multiple unwanted and unsolicited text messages to be transmitted to the 8855 Number.

13

49. Upon information and belief, Blackstone obtained Plaintiff Koller's phone number from Plaintiff Koller's doctor who recommended Blackstone as a provider able to perform a sleep study.

50. Plaintiff Koller did not give her physician permission to convey to Blackstone that Plaintiff Koller consented to Blackstone's calls.[4]

51. All of the text messages Blackstone sent to Plaintiff Koller have been for the purpose of soliciting the sale of Blackstone's sleep study. Blackstone's sleep studies are medical procedures and are therefore "consumer goods or services."

52. Because Blackstone's text messages were for the purpose of soliciting the sale of its sleep study, which is a consumer good or service, these texts were "telephone solicitations" and/or "telemarketing" under the TCPA and "telephonic sales calls" under the FTSA.

53. Finally, Blackstone sent or caused to be sent the telephonic sales text messages, thereby making Blackstone a "telephone solicitor" under the FTSA and subjecting it to the TCPA, which applies to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

54. Blackstone did not have Plaintiff Koller's prior express consent to contact her on her cellular phone.

55. Blackstone did not have Plaintiff Koller's prior written consent to contact her on her cellular phone.

---

[4] *See Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 683 (2018) (The FCC cautioned, however, that the intermediary may only *convey* consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf the consumer.) (Citations and quotations omitted).

56.     On more than one occasion, the first of which was on or around July 27, 2023, Plaintiff Koller asked Blackstone to stop texting her, but Blackstone continued to send text messages to Plaintiff, the latest of which (as of this writing) was on January 26, 2024. A sampling of the text messages received by Plaintiff Koller can be seen in the following screenshots:





57. Despite requirements specifically outlined by the FCC for text messages,[5] Blackstone's text messages fail to provide an opt-out option.

---

[5] *See e.g.*, 12 C.F.R. § 64.1200 *et seq.*

58. Blackstone sent multiple telemarketing text messages to Plaintiff Koller subsequent to Plaintiff Koller instructing Blackstone to stop.

59. More specifically, after Plaintiff Koller texted "stop" to Defendant on July 27, 2023, Blackstone sent no less than an additional 35 telemarketing text messages to Plaintiff.

60. Plaintiff Koller has replied "stop" to Blackstone's text messages no less than 8 times, yet Blackstone continued and continues to send telemarketing text messages to Plaintiff Koller.

61. When texting "stop" did not work, on November 15, 2023, Plaintiff Koller called Blackstone and informed Blackstone's representative that she had no interest in Blackstone's services and to stop contacting her.

62. During the November 15, 2023 call, Blackstone's representative confirmed that Blackstone had previously received Plaintiff Koller's do-not-call requests, and agreed to add Plaintiff Koller to Blackstone's internal do-not-call list.

63. Despite acknowledging Plaintiff Koller's do-not-call requests, Blackstone continued and continues to send telemarketing text message to Plaintiff.

64. Blackstone sent telemarketing text messages to Plaintiff Koller more than thirty days after Plaintiff Koller's initial stop request on July 27, 2023. For example, Blackstone texted Plaintiff Koller on September 19, 2023 and October 25, 2023. The telemarketing text messages Blackstone sent to Plaintiff Koller on September 19, 2023 and October 25, 2023 were each sent more than thirty days after Plaintiff Koller's initial stop request on July 27, 2023.

65. Blackstone's text messages constitute telemarketing and or solicitation because the purpose of the text messages was to encourage the purchase of Blackstone's services.

66. As evidenced by Blackstone's failure to honor Plaintiff Koller's requests to stop

17

texting Plaintiff, Blackstone's internal do-not-call policy (to the extent that it even exists) violates

47 C.F.R. § 64.1200(d) by, among other things, not recording and honoring do-not-call requests.

67.    A quick internet search reveals that other consumers have been subjected to the

same treatment:[6]



**Christina W**

⭐☆☆☆☆                                                                                          09/15/2023

I've been harassed by this company for almost a year now. After deciding not to proceed with a sleep study, the company continued to call me and text me hundreds of time each day, literally every few minutes for months, even after stating that I did not want to proceed. After blocking 10+ phone numbers, the calls finally stopped for a couple months before picking back up from new numbers.

 

**Sarah R**

⭐☆☆☆☆                                                                                          09/22/2023

Juan harasses you and sends texts alert daily multiple times a day about scheduling a service when I've already told them over 20 times I'm not interested.

 

**Brittany W**

⭐☆☆☆☆                                                                                          10/27/2023

They dont take my insurance and they still keep calling and texting from different numbers ( I respond stop to the text and then block the number) trying to get me to pay for the sleep study out of pocket. I have told them verbally over the phone that I am not interested and to remove my number from their list, then they started calling me about another patient. This company seems like a scam

---

[6] *See* https://www.bbb.org/us/fl/tampa/profile/sleep-apnea/blackstone-medical-services-llc-0653-90130035/customer-reviews (Last Visited: Feb. 9, 2024).



### Jayne H

 12/07/2023

This company will text and call you nonstop and wont stop for anything to get you to schedule a sleep test. Ive blocked 10 different numbers and they keep finding me. I was actually planning to do the test until they called me 19 times in one day. I would never ever give my business to a company that behaves this way.



### Jesus D

 12/27/2023

This company is a nightmare. My doctor made the mistake of sending a sleep study prescription to them right before I went on vacation. I talked to them and explained I will do it when I come back. They have sent me literally hundreds of text messages, and dozens of phone calls, sometimes impersonating the doctor ****** and asking me to do the study before I come back. I was thousands of miles away, and on vacation. I blocked their phone number many times, but they are a very sneaky company changing the caller ID every time they text or call. All this prompted me to check the reviews online. Holy macro! Needless to say, I will never work with these clowns.



### Alvin H

 01/17/2024

This company wont stop harassing me. After I told them I didnt feel comfortable giving them my credit card number and paying for services I had not yet gotten they got rude. I told them I would needed to do more investigation and found out they have been doing this to serveral people. I told them I was no longer intrested in moving forward with them and to stop calling and text. Since than I get atleast 2 message a day and I have told them everytime I am not intrested but they will not stop

19



**Natoshia T**
★☆☆☆☆

01/19/2024

My dr put in a sleep study for me and I was told I would be hearing from Blackstone. The next day I received a text asking me to call. Then a few hours later received another text saying they had been trying to call me and had been leaving messages but I never had any. I call them and they tell me its covered by my insurance but I have to pay $250. I tell them I dont have the money and will wait for the test. They noted the account. Next day, text messages start again to have me call them to set up my study. I call again and tell them no. Next day comes and they text again, I ignore it. They call me and I tell them again Im waiting. She notes the account. 1 hour later I receive two more text messages from them. So I called and asked to speak to a supervisor and was transferred with no answer. Went back to the same guy and he transferred me again. This time the guy who answered told me that it doesnt work like that when I asked to speak to a supervisor. So I decided to yell at him. He pulls my account up and he says yeah it says youre not interested in the test so I ask why I am being called and texted and he said it was a problem in their end and he promised it wont happen again. Would never do business with a company like this.

68. Upon information and belief, Blackstone maintains and/or has access to outbound transmission reports for all text messages sent promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff Koller and the putative class members.

69. Upon information and belief, Blackstone maintains and/or has access to inbound transmission reports for all text messages or telephone calls received in response to its text message sent promoting its services and goods. These reports show the dates, times, the targeted telephone numbers, and content of each message to Defendant.

70. Blackstone's failure to honor stop requests constitutes abusive telemarketing.

71. As a result of Blackstone's conduct, Plaintiff Koller suffered a nuisance, invasion of privacy, frustration, storage space, and lost time tending to unwanted text messages.

72. Specifically, with respect to waste of time and nuisance, Plaintiff Koller took the time to ask Blackstone to stop sending text messages, only to continue to receive even more text messages. When her request to stop sent via text message was unsuccessful, Plaintiff also took the time to call Blackstone to request it stop sending messages. Yet, Blackstone continues to send its unwanted telemarketing texts to Plaintiff Koller.

73. Blackstone's unwanted telephonic sales calls caused Plaintiffs and the putative class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

74. Blackstone's text message spam caused Plaintiffs and the putative class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion.

## CLASS ACTION ALLEGATIONS

### A. The Class

75. Plaintiffs bring this case as a class action on behalf of themselves and all others similarly situated.

76. Plaintiffs Steidinger and Koller represent, and are members of the following class (the "Internal Do Not Call List Class"):

> **Internal Do Not Call List Class**: All persons within the United States who, within the time frame(s) relevant to this action, (1) received two or more text messages from Blackstone or anyone acting on Blackstone's behalf, (2) within any 12-month period, (3) for the purpose of selling Blackstone's products and/or services, and (4) including at least one of those text messages being placed more than 30 days after such person requested that Blackstone stop calling and/or texting.

77. Plaintiff Steidinger represents, and is a member of, the following class (the "Do Not Call Registry Class"):

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) were sent text messages and/or telephone calls by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of encouraging the purchase or rental of Defendant's products and/or services; and (5) where either (a) Defendant did not obtain prior express written consent to message the person or (b) the called person previously advised Defendant to "STOP" messaging them.

78. Plaintiff Koller represents, and is a member of the following class (the "FTSA Class"):

**FTSA Class**: All persons within the State of Florida who, (1) were sent a text message from Blackstone or anyone acting on Blackstone's behalf; (2) for the purpose of soliciting Defendant's goods and/or services, and (2) had previously communicated to Blackstone that they did not wish to receive Defendant's text messages.

79. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the classes but believe the class members number in the thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B. <u>Numerosity</u>**

80. Blackstone purports to be one of the leading service providers in the home sleep testing industry. As of February 9, 2024, the Company has 210 employees and millions of dollars in annual revenue.

81. In light of Blackstone's business size, it is reasonable to conclude that Blackstone has placed calls to cellular telephone numbers belonging to thousands of consumers throughout the United States against their express wishes.

82. Upon information and belief, Defendant placed telemarketing messages to telephone numbers registered on the National Do-Not-Call List belonging to thousands of persons throughout the United States where it lacked prior express written consent to place such messages and/or such persons had previously asked Defendant to cease messaging them. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

83. Upon information and belief, Defendant placed telemarketing and solicitation messages to telephone numbers belonging to thousands of persons throughout the United States where it lacked prior express written consent to place such messages and/or such persons had

22

previously asked Defendant to cease messaging them. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

84. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## C. **Common Questions of Law and Fact**

85. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

a. Whether Blackstone's messages constitute "telephone solicitations" or "telemarketing" (under the TCPA) or "telephonic sales calls" (under the FTSA);

b. Whether Defendant can meet its burden of showing it obtained prior written consent to place each telemarketing message and call;

c. Whether the messages and calls made to Plaintiffs and Class Members violate the Do-Not-Call Registry rules and regulations;

d. Whether Defendant deliberately programmed its telephone dialing systems to ignore "Stop" requests and continue sending telemarketing messages and calls to telephone numbers that had previously messaged "Stop";

e. Whether Blackstone continued to send telemarketing text messages after being asked to stop;

f. Whether Blackstone maintains an internal do-not-call list and instructs its employees on how to use the list;

g. Whether Blackstone had any processes or protocols in place to stop texts to persons who asked that the messages stop;

h. Whether Blackstone had the required policies and procedures in place to honor do-

not-call requests;

i.  Whether Blackstone routinely honors such requests;

j.  Whether Blackstone engaged in abusive telemarketing practices;

k.  Whether Defendant's conduct was knowing and/or willful;

l.  Whether Defendant is liable for damages, and the amount of such damages; and

m.  Whether Defendant should be enjoined from such conduct in the future.

86.  The common questions in this case are capable of having common answers.  If Plaintiffs' claim that Defendant routinely placed telemarketing text messages and calls to telephone numbers registered on the National Do-Not-Call Registry, and/or over requests to stop the messages, is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.  Typicality**

87.  Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E.  Protecting the Interests of the Class Members**

88.  Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices, and specifically claims under the TCPA.  Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

89.  A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate

24

claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

**COUNT I**
**VIOLATIONS OF THE TCPA**
**(47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(c)(2))**
**On Behalf of the Do Not Call Registry Class**

90. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. Plaintiffs bring this claim on behalf of themselves and the Do Not Call Registry Class.

92. 47 C.F.R. § 64.1200(c)(2) provides that "No person or entity shall initiate any telephone solicitation to . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

93. The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

94. Defendant initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

95. Each of the aforementioned messages and calls by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(c)(2) by Defendant.

25

96. Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

97. Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

98. Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA;

- Defendant initiated more than one telephone solicitation text and/or call to telephone numbers belonging to Plaintiff Steidinger and members of the Class within a 12-month period despite the fact that Plaintiff and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times; and

**COUNT II**
**WILLFUL VIOLATIONS OF THE TCPA**
**(47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(c)(2))**
**On Behalf of the Do Not Call Registry Class**

99. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

100. Plaintiffs bring this claim on behalf of themselves and the Do Not Call Registry Class.

101. Defendant is fully aware at all relevant times that the telephone numbers it sends telephone solicitations to are registered on the National Do-Not-Call Registry. Nonetheless, Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period even though Plaintiffs and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times.

26

102. Each of the aforementioned messages and/or calls by Defendant constitutes a knowing and willful violation of the TCPA.

103. Plaintiffs and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

104. Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

105. Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone solicitation text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period despite the fact that Plaintiffs and other class members' telephone numbers were registered on the National Do-Not-Call Registry at all relevant times;

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-call request to Defendant.

**COUNT III**
**VIOLATIONS OF THE TCPA**
**(47 U.S.C. § 227, et seq. and 47 C.F.R. § 64.1200(d)(3))**
**On Behalf of the Internal Do Not Call List Class**

106. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

107. Plaintiffs bring this claim on behalf of themselves and the Internal Do Not Call List Class.

108. 47 C.F.R. § 64.1200(d)(3) provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards: . . . Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

109. The TCPA provides a private right of action to "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations . . . ." 47 U.S.C. § 227(c)(5).

110. Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

111. Each of the aforementioned messages by Defendant constitutes a violation of the TCPA and 47 C.F.R. § 64.1200(d)(3) by Defendant.

112. Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages for each text message sent in violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(B).

113. Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

114. Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant violated the TCPA; and

- Defendant initiated more than one telephone telemarketing text message and/or call to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

**COUNT IV**
**Willful Violations of the Telephone Consumer Protection Act,**
**(47 U.S.C. § 227, *et seq.* and 47 C.F.R. § 64.1200(d)(3))**
**On Behalf of the Internal Do Not Call List Class**

115. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

116. Plaintiffs bring this claim on behalf of themselves and the Internal Do Not Call List Class.

117. Defendant deliberately programmed its telemarketing telephone systems to continue sending telemarketing messages and calls to consumers after receiving a "Stop" request. Accordingly, Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made.

118. Each of the aforementioned messages and/or calls by Defendant constitutes a knowing and willful violation of the TCPA.

29

119. Plaintiffs and the Class are entitled to an award of up to $1,500.00 in statutory damages for each message sent in knowing and willful violation of the TCPA pursuant to 47 U.S.C. § 227(c)(5)(C).

120. Additionally, Plaintiffs and the Class are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

121. Further, Plaintiffs and the Class are also entitled to and do seek a declaration that:

- Defendant knowingly and/or willfully violated the TCPA;

- Defendant knowingly and/or willfully initiated more than one telephone telemarketing text message to telephone numbers belonging to Plaintiffs and members of the Class within a 12-month period where the telephone subscriber had previously made a do-not-call request to Defendant, and Defendant failed to honor the do-not-call request within a reasonable period of time from the date the request was made; and

- It is Defendant's practice and history to place telephone solicitations and telemarketing messages to persons whose telephone numbers are registered on the National Do-Not-Call Registry and to persons who had previously made a do-not-call request to Defendant.

**COUNT V**
**Violation of the FTSA, Fla. Stat. § 501.059(5)**
**On Behalf of the FTSA Class**

122. Plaintiffs repeat and reallege the above paragraphs of this Complaint and incorporates them herein by reference.

123. The FTSA provides that "[a] telephone solicitor or other person may not initiate [a] … text message … to a consumer, business, or potential donor … who has previously

30

communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound … text message … made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

124. "Telephone solicitor" is defined as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]" Fla. Stat. § 501.059(1)(i).

125. "Telephonic sales call" is defined as a "…text message … to a consumer for the purpose of soliciting a sale of any consumer goods or services[.]" Fla. Stat. § 501.059(1)(j).

126. Black's Law Dictionary defines "service" as "the act of doing something useful for a person or company, usu[ally] for a fee." Black's Law Dictionary 1491 (9th ed.2009). *Wooten v. Quicken Loans, Inc*., 626 F.3d 1187, 1193 (11th Cir. 2010).

127. Blackstone sent text messages to Plaintiff Koller and putative FTSA Class members intended to solicit the sale of sleep studies and other services for a fee.

128. Sleep studies are "consumer goods or services" within the meaning of Fla. Stat. § 501.059(1)(c).

129. Blackstone's text messages intended to solicit the sale of sleep studies and other services were therefore "telephonic sales calls."

130. Blackstone, as the entity placing the telephonic sales calls or causing them to be made, is therefore a "telephone solicitor."

131. Plaintiff Koller and putative class members requested Blackstone to stop sending them telephonic sales text messages, but Blackstone continued.

132. Blackstone's continued text messages to Plaintiff and putative class members after they asked Defendant to stop sending the text messages, therefore violate Fla. Stat. § 501.059(5).

133. Each member of the FTSA Class has constitutional standing as, by definition, each member expended the time and effort to ask Blackstone to stop, yet continued to be sent text messages, invading their privacy, further wasting their time, and constituting a personal nuisance.

134. For violations of Fla. Stat. § 501.059(5), Plaintiff Koller and putative class members are entitled to $500 per text message in statutory damages. Fla. Stat. § 501.059(10)(a).

135. Plaintiff Koller and putative class members are entitled to $1,500 per text message should the Court find the violations willful. Fla. Stat. § 501.059(10)(b).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that judgment be entered against the Defendant as follows:

A. An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the Classes and Plaintiffs' counsel as Class Counsel;

B. Injunctive relief prohibiting such violation of the TCPA and FTSA by Defendant in the future;

C. Statutory damages of $500.00 for each and every text message in violation of the TCPA and FTSA;

D. Treble damages of up to $1,5000.00 for each and every text message in willful and/or knowing violation of the TCPA and FTSA;

E. An injunction requiring Blackstone to comply with 47 C.F.R. § 64.1200(d) by

    1) maintaining the required written policies;

    2) providing training to their personnel engaged in telemarketing;

    3) maintaining a do-not-call list;

    4) and such further and other relief as the Court deems necessary.

F.  An award of attorneys' fees and costs to counsel for Plaintiffs and the Classes; and

G.  Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: December 31, 2024                    Respectfully submitted,

By    */s/ Sergei Lemberg*
      Sergei Lemberg
      LEMBERG LAW, L.L.C.
      43 Danbury Road, 3rd Floor
      Wilton, CT 06897
      Telephone: (203) 653-2250
      Facsimile:  (203) 653-3424
      *Attorneys for Plaintiffs*

By: /s/ Scott D. Owens
    Scott D. Owens
    Florida Bar No. 0597651 (to file *PHV*)
    SCOTT D. OWENS, P.A.
    2750 N. 29th Ave., Ste. 209A
    Hollywood, FL 33020
    Telephone: (954) 589-0588
    Facsimile: (954) 337-0666
    scott@scottdowens.com

By: /s/Kimberly H. Wochholz
    Kimberly H. Wochholz
    Fla. Bar No. 0092159 (*PHV*)
    The Consumer Rights Law Group, PLLC
    P.O. Box 5326
    Sun City Center, FL 33571
    Phone: 813-413-5710
    Fax: 866-535-7199
    Kim@ConsumerRightsLawGroup.com
    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

/s/ Sergei Lemberg
Sergei Lemberg