**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| | : | |
| Joseph Jones, Seth Steidinger and Natasha Koller, *on behalf of themselves and all others similarly situated*, | : : : | |
| | : | Case No. 24-cv-01074 |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| Blackstone Medical Services, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS I-IV OF THE <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>**

Plaintiffs Joseph Jones ("Plaintiff Jones"), Seth Steidinger ("Plaintiff Steidinger") and Natasha Koller ("Plaintiff Koller") (collectively, the "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss Counts I-IV of the Consolidated Class Action Complaint.

**INTRODUCTION**

In a questionable attempt to avoid liability, Defendant advances the argument that § 227(c) of the Telephone Consumer Protection Act ("TCPA") and its incorporated Federal Regulations do not create liability for text messages. On its face, this argument strains credulity and lacks any substantive merit. Additionally, Defendant proposes that Plaintiffs' request for injunctive and declaratory relief be dismissed for lack of standing and redundancy. While all three of these arguments could have been brought in Defendant's previous Motion to Dismiss—falling under the purview of Fed. R. Civ. P. 12(g)(2) and its ban on piecemeal litigation—Plaintiffs nevertheless

contend that each lacks merit.[1] As such, and as explained in detail below, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

**ARGUMENT**

**A. The FCC and Courts unanimously agree that text messages apply under the TCPA.**

It has been universally agreed upon by Courts and the Federal Communications Commission ("FCC") that the TCPA applies to text messages. To argue otherwise, as Defendant does, is to selectively read features of the statute and regulations without regard to binding authority, historical context, or common sense.

When Congress enacted the TCPA in 1991, "text messaging capabilities were not available[.]" *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010). Nevertheless, Congress sought to "protect residential telephone subscribers' privacy to avoid receiving ***telephone solicitations*** to which they object." 47 U.S.C. § 227(c)(1) (emphasis added).[2] For this endeavor, Congress tasked the FCC to consider approaches for addressing unwanted "telephone solicitations," and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(C), (D), & (E). To this end, section 227(c)(5) of the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation

---

[1] When Plaintiffs filed their First Amended Class Action Complaint ("FAC") (Doc. 6)—the operative pleading over Defendant's prior Motion to Dismiss (Doc. 9)—Plaintiffs Steidinger and Koller brought their claims, in part, under 47 U.S.C. § 227(c). *See* FAC, Counts I, II, III, and IV. Pursuant to these claims, and at the core of Plaintiffs factual allegations, stood violative text messages. *See id*. at ¶¶ 1, 3-7, 38-44, 47, 50-55, 58-74, 76, 78-80, 87-88. For these violations, Plaintiffs sought, *inter alia*, injunctive and declaratory relief. *Id*. at ¶¶ 102-103, 110-111, 121, 131. Upon filing their Consolidated Class Action Complaint ("CCAC") (Doc. 29), Plaintiffs made no material changes to the underlying allegations and once again included injunctive and declaratory relief. *See generally*, CCAC.

[2] The TCPA defines "telephone solicitation" to mean "the initiation of a ***telephone call or message***…which is transmitted to any person." 47 U.S.C. § 227(a)(4); *see also* 47 C.F.R. 64.1200(f)(15); *Lozano*, 702 F. Supp. 2d at 1007 ("As other courts have recognized, however, the term 'call' in § 227 is not limited to oral telephone calls: Webster's defines 'call' in this context 'to communicate with or try to get into communication with a person by a telephone'").

of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). Relevant to the facts here, the FCC promulgated 47 C.F.R. § 64.1200(c) which prohibits the initiation of "any telephone solicitation" to those registered with the national do-not-call registry, and 47 C.F.R. § 64.1200(d) which prohibits the initiation of "any artificial or prerecorded-voice telephone call…or any call for telemarketing purposes…" The regulations specifically state that text messages apply to subsections (c) and (d). 47 C.F.R. § 64.1200(e).

**1. The FCC's Final Declaratory Rulings find that text messages are calls**

In line with its own regulatory framework (see above), the FCC has made binding, declaratory rulings holding that "calls" are text messages under the TCPA.

As a preliminary matter, the Administrative Orders Review Act ("Hobbs Act") grants federal courts of appeal the "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or determine the validity of [] all final orders of the Federal Communications Commission[.]" 28 U.S.C. § 2342(1). "This procedural path created by the command of Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA.'" *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010). In other words, District Courts are required to adhere to any "final orders" by the FCC. *Id.*; *see also PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 6-8 (2019).

In its 2003 Order, the FCC affirmed "that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

("2003 Order") 18 FCC Rcd. 14014 ¶ 165 (2003). It then goes on to say that "these calls, with limited exceptions…encompasses both voice calls and text calls to wireless numbers[.]" *Id*. The final order from the FCC is clear: calls encompass text messages.

However, the 2003 Order need not be dispositive in and of itself; later FCC Orders have come to similar conclusions about text messages. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2012 Order"), 27 FCC Rcd. 1830, 1832 ¶ 4 (2012) ("The Commission has concluded that the prohibition encompasses both voice and text calls, including short message service (SMS) calls, if the prerecorded call is made to a telephone number assigned to such service"); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2015 Order"), 30 FCC Rcd. 7961 (2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are"); *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2016 Order"), 31 FCC Rcd. 9074, 9092 ¶ 40 (2016) (requiring text messages related to debt servicing to "disclose the right [to-opt-out] within each text message or in a separate text message that contains only the disclosure and is sent immediately preceding the first covered text message"). Most notably, in 2023, "the Commission propose[d] ***to clarify*** that the National Do-Not-Call Registry protections apply to text messages as well as voice calls and to codify this clarification in the Commission's rules." *Targeting and Eliminating Unlawful Text Messages*, Further Notice of Proposed Rulemaking, 88 FR 20800, 20802 ¶ 6 (2023) (emphasis added). "Although the Commission has stated that text messages are calls for [TCPA] purposes, it has not explicitly included text messages in the codified DNC rules…" *Id*. The FCC sought "comment on whether codifying the DNC protections to marketing texts further protect[s] consumers from unwanted

marketing text messages" and "note[d] that the DNC protections do not depend on whether the caller uses an autodialer, unlike some provisions of the TCPA." *Id*. at 20802 ¶ 7.

In its 2023 Report and Order, the FCC "adopt[ed] the proposal to codify the National DNC Registry's existing protections to text messages." 89 FR 5098, 5099 ¶ 6, Commission's Second Report and Order and Waiver Order (2023). Noting its previous conclusion "that the national database should allow for the registration of wireless telephone numbers," the FCC made it clear that its "action is ***consistent with Federal court opinions and will deter illegal texts*** and make DNC enforcement easier." *Id*. (emphasis added). Speaking to its legal authority, the FCC stated that, for purposes of the TCPA, texts are included in the term 'call.'" *Id*. at 5101 ¶ 26. Indeed, "[t]he DNC restrictions have long applied to wireless phones and the Commission and courts have long held that text messages are calls under the TCPA." *Id*. Pursuant to this Order, and as of March 26, 2024, the FCC amended C.F.R. § 64.1200(e) "by adding 'or text messages' after the word 'calls.'" *Id*. at 5104; *E.g.*, *Misner v. Empire Auto Protect, LLC*, 2024 U.S. Dist. LEXIS 202146, at *7 (S.D. Ohio Nov. 6, 2024) ("The FCC issued a regulation clarifying that [47 C.F.R. § 64.1200(d)] applies equally to text message calls or text messages to wireless telephone numbers").

Despite binding authority from the FCC, it is odd that Defendant focused solely on the fact that the 2003 Order referenced § 227(b). In fact, Defendant even attempted to posit that "[t]he FCC intentionally omitted text messages or SMS messages from its regulations within § 64.1200(c) and (d)." (Doc. 33 at 4). Not so. As stated previously, § 64.1200(e) unambiguously states that text messages apply to the preceding two sections. Anticipating this retort, Defendant argues that section (e) only applies "to the extent described in the [FCC's 2003 Order]." (Doc. 33 at 5-6). According to Defendant, the plain language of § 64.1200(e) must be ignored because the only

5

paragraph in the 2003 Order which references text messages does so in the context of § 227(b).[3] This misconstrues the purpose of § 64.1200(e) and its historical context.

The 2003 Order, widely known for its initial adoption of the National do-not-call registry, also discussed "whether a subscriber to a wireless telephone service could be considered a residential telephone subscriber for purposes of the FCC Rule." *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 926 (C.D. Ill. 2014). *Dish Network* provides an instructive summary:

> "The FCC found that many consumers elect to use a wireless telephone as their residential phone service. The FCC determined that these wireless customers should receive the benefits of the protections of the FCC Rule. Based on this analysis, the FCC concluded that wireless customers could register their wireless telephone numbers on the Registry…***The FCC incorporated by reference in the FCC Rule this analysis from [the 2003 Order]***: '(e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…'"

*Id.* (quoting 47 C.F.R. § 64.1200(e)) (emphasis added). Because the original purpose of 64.1200(e) had been to give wireless customers protection under the FCC's do-not-call provisions, its incorporation of the 2003 Order had merely been to qualify when a wireless customer may not be considered a 'residential subscriber' under the rules. *See* 2003 Order ¶ 36.[4] Thus, Defendant's sole reliance on the 2003 Order is unavailing. In fact, even courts have noted that a textual analysis of the 2003 Order compels a different conclusion from Defendant:

> "The fact that the FCC uses 'voice,' 'text' and 'short message service (SMS)' to modify 'calls' itself indicates that voice calls, text calls, and SMS calls are all types of calls, and thus, necessarily, calls. [citing the "2003 Order"]. Subsection 227(c)(5) grants a private right of action to a 'person who has received more than one telephone call within any 12-month period.' The statute does not specify that it must

---

[3] It should come as no surprise that the 2003 Order mentions text messages once; Text messaging had barely been *invented* ten years prior "with customers in 1995 sending on average only 0.4 messages per GSM customer per month." *See* https://en.wikipedia.org/wiki/Text_messaging (last accessed 5/22/2025).

[4] "Therefore, we conclude that wireless subscribers may participate in the national do-not-call list. As a practical matter, since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.' Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action."

be a voice call or a live telephone solicitation or a live telemarketing call: it simply applies to telephone calls broadly. Because the FCC recognizes text calls as a type of call, a text message would presumably be a form of a telephone call under § 227(c)(5)."

*Hudson v. Palm Beach Tan, Inc.*, 2024 U.S. Dist. LEXIS 165676, at *19-20 (M.D.N.C. Aug. 12, 2024); *see also United States v. Amer. Trucking Assoc.*, 310 U.S. 534, 542-43 (1940) ("when words of a statute are susceptible to more than one meaning, courts are to interpret them in a manner which is reasonable given the subject matter of the statute and its purpose").

Given these unambiguous orders from the FCC—including the TCPA's own regulatory framework— and the FCC's binding authority under the Hobbs Act, this Court should find that text messages apply under § 227(c) of the TCPA.

### 2. Case law universally holds that text messages are calls within the TCPA

In the seminal case of *Satterfield v. Simon & Schuster, Inc.*, the Ninth Circuit Court of Appeals found that "a text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Applying the 2003 Order, discussed above, the Court first looked "to the ordinary, contemporary, and common meaning of the verb 'to call'" which Webster's defined as "to communicate with or try to get into communication with a person by a telephone." *Id*. at 953-54. Acknowledging nuisance and privacy concerns, the Court held "that a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Id*. at 954. The Court even "recognize[d] that Congress could not have spoken clearly to this issue in 1991 when the statute was enacted" precisely because text messages had not been invented. *Id*. Finally, when addressing the 2003 Order, the Court found that "[i]t is undisputed that text messaging is a form of communication used primarily between telephones" and "[t]he FCC's interpretation is also consistent with the purpose of the TCPA—to protect the privacy interests of telephone subscribers." *Id*.

While *Satterfield* spoke in the context of § 227(b), Courts within the Seventh Circuit and across the country universally agree that the federal regulations and § 227(c) of the TCPA apply to text messages. *Griffith v. ContextMedia, Inc.*, 235 F. Supp. 3d 1032, 1033 (N.D. Ill. 2016) ("the legislative history indicates that Congress sought to protect the 'freedom [of consumers] to choose how their telephones are used,' 137 Cong. Rec. S18317-01, 1991 WL 250460 (Senator Pressler), and unwanted text messages are no less an encroachment on that freedom than unwanted phone calls"); *Reimer v. Kohl's, Inc.*, 2023 U.S. Dist. LEXIS 168078, at *13 (E.D. Wis. Sept. 21, 2023) (finding that text messages apply to § 227(c)); *Fralish v. Digital Media Solutions*, 2021 U.S. Dist. LEXIS 225281, at *18 (N.D. Ind. Nov. 17, 2021) (explaining in a motion to compel that "the sending of text messages at issue…are relevant to [plaintiff's] Section 227(c) claim because this information bears directly on whether [defendant] potentially violated Section 227(c) by directing more than one telephonic communication…"); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (Recognizing that under 47 U.S.C. § 227(c), "the owner and subscriber of a phone with a number listed on the Do-Not-Call Registry has suffered an injury in fact when unsolicited telemarketing calls or texts are sent to the number in putative violation of the TCPA"); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198-99 (D. Mass. 2021) ("The overwhelming weight of precedent holds that text messages are calls for purposes of the TCPA…[Defendant] has not pointed to a single court which has held that text messages are not calls for the purposes of TCPA"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1206-07 (M.D. Fla. 2022) (finding that allegations under § 227(c) stated a claim for relief based on text messages); *Persichetti v. T-Mobile USA, Inc.*, 479 F. Supp. 3d 1333, 1336-38 (N.D. Ga. 2020) (finding that text messages apply under 47 C.F.R. § 64.1200(d)); *Pepper v. GVG Capital LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. June 9, 2023) ("[Defendant] also argues that text messages are not actionable under the TCPA

provisions at issue…This argument fails in the face of the statutory text, which refers to 'telephone call[s] or message[s],' 47 U.S.C. § 227(c), the applicable regulations, and the decisions of the various courts to consider the issue"); *Hudson*, 2024 U.S. Dist. LEXIS 165676 at *15-16 (finding that "the weight of the case law supports the conclusion that the receipt of text messages can establish an injury under § 227(c)(5)…[and] the statutory text and FCC regulations and guidance support the conclusion that text messages can establish the basis for a claim under § 227(c)(5)"); *Abboud v. Circle K Stores Inc.*, 2025 U.S. Dist. LEXIS 13605 at * (D. Ariz. 2025) ("A telephone solicitation can be a call or text message").

This seemingly universal stance appears to comport with the Seventh Circuit's recognition that "statutes must be permitted to apply to technologies not in existence when a statute was drafted." *Lozano*, 702 F. Supp. 2d at 1008 (citing *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984)). In fact, "the legislative history of the TCPA reflects that Congress anticipated future technologies when it enacted the statute." *Id*. (citing 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies")). Thus, "while text messaging was not a capability in 1991, the plain meaning of the term 'call' at that time includes communications by phone, and does not prohibit application of the statute to text messaging." *Id*. at 1007. It should be no surprise, then, that Defendant is unable to cite any case law to support its position.[5] Indeed, Defendant attempts to contest an issue so thoroughly adjudicated that it borders on frivolity.

### 3. Public policy demands that text messages apply to § 227(c)

---

[5] Defendant only attempts to distinguish the case law cited in Plaintiffs' Consolidated Complaint rather than put forth any substantive case law affirming its position. Still, the attempts to distinguish these cases are inapposite as both cases stated that "[a] text message qualifies as a 'call' within the scope of the Act," with *Hand*, in particular, denying dismissal of claims under § 227(c) through Motion for Summary Judgment and certifying a DNC-based Class. *Hand v. Beach Entm't KC, LLC*, 456 F. Supp. 3d 1099, 1153 (W.D. Mo. 2020).

Defendant's argument, taken to its logical conclusion, would be disastrous to public policy. Individuals, young and old, would be inundated with unwanted text messages and lack any appropriate remedy. Here, Plaintiffs and many others suffered from Defendant repeatedly sending text messages despite clear revocations. CCAC ¶¶ 3-6. The fact that so many individuals have come forward about Defendant's harassing behavior speaks of the need for text messages to be within the TCPA's purview. Indeed, the very purpose of the TCPA—to protect consumers from intrusive, unwanted communications—is turned upside down if text messaging, a major form of telephone communication, is excluded from 227(c). Text messages are functionally equivalent to phone calls in their immediacy and personal intrusion—often more so, given the near-universal use of mobile devices and the disruption caused by unsolicited alerts. Eliminating liability under § 227(c) for unwanted texts would effectively gut a key deterrent against these intrusions, incentivizing businesses to flood consumers' phones with messages without their consent. Consumers would lose meaningful recourse, while companies would gain a low-cost, high-impact channel to bypass privacy boundaries. In a digital age where communication is increasingly mobile, stripping the protections of § 227(c) from text messages would greatly undermine public policy.

Not only has the FCC ruled definitively on the matter, but Courts are in agreement: text messages apply to § 227(c) of the TCPA. Holding otherwise goes against binding precedent, sound law, and good public policy. Accordingly, this Court should deny Defendant's Motion to Dismiss.

### B. Plaintiffs are entitled to injunctive relief.

Standing for prospective injunctive relief is typically said to require that "a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los*

*Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). In *Lyons*, the Supreme Court analyzed a civil rights case against abusive law enforcement practices and gave great deference to its prior holding in *O'Shea v. Littleton*, 414 U.S. 488 (1974). Many courts, including Defendant here, have gone on to cite the proposition from *O'Shea* that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id*. However, the analysis is not so simple. *O'Shea* spoke about "a continuing pattern and practice of conduct, under color of law" with respect to general allegations:

> ***None of the named plaintiffs is identified as himself having suffered any injury in the manner specified***. In sharp contrast to the claim for relief against the State's Attorney where specific instances of misconduct with respect to particular individuals are alleged, the claim against petitioners alleges injury in only the most general terms. At oral argument, respondents' counsel stated that some of the named plaintiffs-respondents…had actually been defendants in proceedings before petitioners and had suffered from the alleged unconstitutional practices. Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by and continuing, present adverse effects. Neither the complaint nor respondents' counsel suggested that any of the named plaintiffs at the time the complaint was filed were themselves serving an allegedly illegal sentence or were on trial or awaiting trial before petitioners…***Of course past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury***."

*Id*. at 495-96 (emphasis added). Indeed, *O'Shea* did not foreclose evidence of "past exposure…in itself" but qualified its applicability. Furthermore, the Supreme Court tempered this view on injunctive relief in lieu of the "the need for a proper balance in the concurrent operation of federal and state courts" which "counsels restraint against the issuance of injunctions ***against state officers engaged in the administration of the State's criminal laws***." *Id*.; *see also Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000) ("past wrongs, while not sufficient to confer standing for injunctive relief, may be evidence that future violations are likely to occur").

Here, unlike *O'Shea*, Plaintiffs allege specific harm done to them (and others). *See generally*, CCAC. Additionally, these harms are against a business entity—not a state actor. *Id*. ¶

11

13. Moreover, Plaintiffs' Consolidated Complaint—which is predicated on Defendant's systematic failure to stop sending telephonic solicitations, despite repeated requests by Plaintiffs— is replete with examples of the "real and immediate threat" of future injury. *See* CCAC ¶ 2 ("Blackstone operates an aggressive telemarketing campaign where it repeatedly sends text messages and telephone calls…"); ¶¶ 3-5 (summarizing Plaintiffs personal experiences); 6 (detailing consumer complaints online); ¶ 35 (describing how when Plaintiff Jones said he was not interested, Defendant directly responded to his text, acknowledging their knowledge of his opt-out, and proceeded to continue soliciting him thereafter); ¶ 59 (Defendant "deliberately programmed its telephone dialing systems to ignore [stop requests]"); ¶ 84 (showing other consumers complaining of similar treatment). While Defendant claims that not receiving texts for "extended period of time" warrants denial of injunctive relief, the pervasive and prolonged actions of Defendant warrant otherwise. *See Griffith*, 235 F. Supp 3d at 1035 ("I am not persuaded, however, that dismissal of plaintiff's claim for injunctive relief is appropriate at this juncture. As plaintiff points out, the TCPA expressly authorizes injunctive relief, and plaintiff's allegations— particularly those directed to her months-long efforts to stop defendants' unwanted texts—are sufficient to entitle her to develop the factual record as to whether injunctive relief is appropriate"); *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1109 (E.D. Wis. 2016) (finding standing to pursue claims for injunctive relief based on a defendant's engagement in a "company-wide, pervasive" marketing campaign).

Furthermore, claims of injunctive relief should not be stricken at the motion to dismiss stage when class-wide allegations are presented. *Burke v. Credit One Bank, N.A.*, 2019 U.S. Dist. LEXIS 62770 (M.D. Fla. Feb. 5, 2019). In *Burke*, the Court denied Defendant's request to dismiss

or strike Plaintiff's prayers for injunctive relief because an injunction standing analysis had not yet been conducted for prospective class members. *Id*. at *10-12. The Court provided as follows:

> Here, however, the Complaint's allegations do not show that Plaintiff currently faces an ongoing threat of receiving calls from Defendants. As Defendants point out, Plaintiff does not allege that she has continued to receive such calls or even that she has received calls within the past year. Nonetheless, Plaintiff seeks injunctive relief in favor of both herself *and* the putative class. **The Court cannot examine, at this juncture, whether injunctive relief is appropriate for members of the putative class, as the parties have not engaged in discovery and Plaintiff has not moved to certify the class**. *See Snyder*, 258 F. Supp. 3d at 900-01 (preliminarily finding that the **named plaintiffs did not face a current threat** of receiving telephone calls from the defendant, but conducting a standing analysis for the requested injunction—finding that the **named plaintiffs had sufficiently demonstrated that class members continued to receive phone calls and a named plaintiff possessed a live claim for injunctive relief when she joined the lawsuit**—where the parties had engaged in discovery and the named plaintiffs had moved for class certification). Indeed, Defendants ask the Court to dismiss or strike injunctive relief for presently unidentifiable class members prior to an opportunity for the putative class' certification. Defendants' request for the Court to dismiss or strike Plaintiff's prayers for injunctive relief is therefore due to be denied.

*Id*. (emphasis added); *see also Synder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017) (finding "that plaintiffs may pursue claims for injunctive relief on behalf of a class" as "[a] defendant's choice to end the challenged behavior—where he remains free to resume the unlawful conduct at any time—is insufficient to render plaintiff's claim moot").

Here, Plaintiff alleges class wide claims and prayers for relief which includes a prospective class. To strike or dismiss Plaintiff's prayer for injunctive relief—like the Defendants asked for and were denied in Burke—would prevent and future class claimants from receiving an adequate remedy. Class wide injunctive relief based on TCPA claims are statutorily available and may be closely tailored to prevent Defendant from engaging in future harm. Even if such harm has not recently happened, the potential for recurrence remains a significant possibility. Defendant has not stated that it stopped sending text messages as part of its baseline practices. Further discovery is

thus warranted. Accordingly, at this stage, this Court should deny Defendant's motion to dismiss Plaintiff's prayers for injunctive relief.

### C. Plaintiffs are entitled to declaratory relief.

For the same reasons as expressed above, Plaintiffs are entitled to declaratory relief. *See Simon v. Coop. Educ. Serv. Agency #5*, 46 F.4th 602, 609 (7th Cir. 2022) ("The Supreme Court has repeatedly found that declaratory judgments 'closely resemble' injunctive relief, the quintessential equitable remedy").

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act further provides that "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id*. "The very purpose of a declaratory judgment is to provide *prospective* relief." *White v. Califano*, 437 F. Supp. 543, 560 (D.S.D. 1977), aff'd, 581 F.2d 697 (8th Cir. 1978) (emphasis original). Moreover, "the availability of another remedy does not preclude declaratory relief[.]" *Highland Park v. Train*, 519 F.2d 681, 693 (7th Cir. 1975). In that sense, a court may exercise its discretion to provide declaratory relief "if the declaratory judgment will clarify and settle the disputed legal relationships and afford relief from the uncertainty and controversy that created the issues[.]" *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 578 (7th Cir. 1994).

Here, declaratory relief will "afford relief from the uncertainty and controversy" surrounding Defendant's attempt to characterize these text messages, among other things, as required under healthcare exceptions. Indeed, the declaration would solidify, once fully adjudicated, that Defendant knowingly violated the TCPA and refused to abide by both its National

and company-specific do-not-call provisions. *See* CCAC ¶¶ 115, 121, 131, 138. Defendant argues that declaratory relief is duplicative of the Plaintiffs' request for monetary relief; however, the cases Defendant cites in support specifically analyze declaratory relief under a breach of contract context. *See Holmes v. Progressive Universal Ins. Co.*, 2023 U.S. Dist. LEXIS 3348, at *32 (N.D. Ill. Jan. 9, 2023) ("federal courts commonly exercise their discretion to dismiss declaratory judgment claims where they are duplicative of breach of contract claims"). Plaintiffs do not have separate breach of contract claims but seek clarification as to their rights pursuant to this Court's discretion to provide declaratory relief. Accordingly, Plaintiffs respectfully request that Defendant's motion be denied as to declaratory relief.

**CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss in its entirety. Alternatively, Plaintiffs request leave to amend should the Court believe that the operative complaint is deficient. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (recognizing the broad discretion of district courts to provide leave to amend under Fed. R. Civ. P. 15).

Dated: May 27, 2025            Respectfully submitted,

By    */s/ Abbas Kazerounian*
       Abbas Kazerounian, Esq.
       ak@kazlg.com
       Ryan L. McBride, Esq.
       ryan@kazlg.com
       KAZEROUNI LAW GROUP, APC
       245 Fischer Ave Suite D1
       Costa Mesa, CA 92626
       Telephone: (800) 400-6808
       Facsimile: (800) 520-5523

       *Lead Interim Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, a true and correct copy of the foregoing was filed with the Clerk of the Court through the ECF system which gave notice of such filing to all parties of record.

*/s/ Abbas Kazerounian*
Abbas Kazerounian